Iva N. WILLIAMS, Plaintiff-Appellant,

v.

SOUTHWESTERN BELL TELEPHONE COMPANY, Defendant-Appellee.

No. 82–1638
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Oct. 31, 1983.

Gardere & Wynne, B. Prater Monning, III, Dallas, Tex., for plaintiff-appellant.

Barbara R. Hunt, Keith E. Davis, Dallas, Tex., for defendant-appellee.

Before REAVLEY, RANDALL and WILLIAMS, Circuit Judges.

PER CURIAM:

This appeal concerns a case of alleged employment discrimination brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5. The plaintiff, Iva Williams, claimed that she was illegally discharged from her employment with the defendant, Southwestern Bell Telephone Company ("Bell"), as a result of racial discrimination. At the close of a full trial to the bench, the district court granted Bell's motion for involuntary dismissal under Fed.R. Civ.P. 41(b), and the plaintiff timely appealed. We affirm.

Iva Williams, a black woman, was employed by Bell as a teller in Bell's public office. Her primary responsibility consisted of receiving and recording payment of their telephone bills by Bell's customers. In the course of these duties, she was required to perform manually a series of "steps," the end result of which was the proper recordation of customer payments.[1] A teller error

---

1. These steps were seven-fold:

(1) Receiving and counting money;

(2) Entering the amount tendered in an adding machine;

(3) Entering the amount due in an adding machine;

(4) Counting out change;

(5) Stamping Bell's copy of the customer's receipt;

(6) Stamping the customer's receipt; and

(7) If necessary, "marking down" the customer's receipt; i.e. in cases where the amount tendered by the customer serves to reduce but not eliminate her debt, the teller indicates the customer's new balance by "marking it down" by the amount actually paid.

in the performance of most of the steps would be reflected by an imbalance in the bookkeeping records, in the form of an excess or shortage of cash. It is undisputed that errors of this type are unavoidable, and that no employee, black or white, has ever been discharged on this basis. However, if the error is one involving a discrepancy between the amount tendered by the customer and the amount reflected on the customer's receipt, Bell's records would not reflect the error; it would be discovered only when a customer brought the discrepancy to Bell's attention. It was this type of error, made repeatedly over a relatively short period of time, for which Williams was discharged.

■ On appeal, both parties urge us to evaluate the proceedings below according to the order of proof mandated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). These cases require a three-step analysis of the evidence in Title VII actions. Initially the plaintiff must establish a *prima facie* case of discrimination, thus creating a rebuttable presumption that Title VII has been violated. The defendant must then counter the plaintiff's *prima facie* case by producing evidence that the defendant's action was not motivated by discriminatory intent. Finally, the plaintiff may then attack the defendant's rebuttal as pretextual. *See McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825. The plaintiff retains the burden of persuasion throughout the case. *See Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

The three-fold analysis contemplated by *McDonnell Douglas* and *Burdine,* however, is not the proper vehicle for evaluating a case that has been fully tried on the merits. In such a case, as the Supreme Court recently pointed out in *United States Postal Service Board of Governors v. Aikens,* —— U.S. ——, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983), for the litigants or the courts to frame the issues in terms of whether the plaintiff established a *prima facie* case

"unecessarily evade[s] the ultimate question of discrimination *vel non.*" *Id.* at 1481. Thus, although the parties maintain that our function is to evaluate the sufficiency of Williams' *prima facie* case and Bell's rebuttal, it is clear that this analysis would be inappropriate.

When a trial court denies a defendant's motion to dismiss at the close of the plaintiff's case, and the defendant goes on to present its rebuttal, "the *McDonnell-Burdine* presumption 'drops from the case,' and the factual inquiry proceeds to a new level of specificity." *Id.* at 1482. At that point, the function of the district court is to decide the ultimate factual issue in the case: whether or not there was intentional discrimination against the plaintiff in violation of Title VII. On this issue, the plaintiff has the burden of persuasion, which she may meet "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *Aikens,* —— U.S. ——, 103 S.Ct. at 1483 (Blackmun, J., concurring). In either case, the trier of fact must then determine which explanation, employer's or employee's, is the more persuasive. To focus this determination on the question of the *prima facie* case would be to ignore the teachings of *McDonnell Douglas, Burdine,* and *Aikens.* As the Court noted in *Aikens:*

> Where the defendant has done everything that would be required of him if the plaintiff had properly made out a *prima facie* case, whether the plaintiff really did so is irrelevant. The district court has before it all the evidence it needs to decide whether "the defendant intentionally discriminated against the plaintiff."

103 S.Ct. at 1482 (quoting *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095). *See also Elliott v. Group Medical & Surgical Service,* 714 F.2d 556, 564 (5th Cir.1983) ("Where, as here, the case has been fully tried on the merits, the adequacy of a party's showing at any particular stage of the *McDonnell*

*Douglas* ritual is of no consequence. We are simply to determine whether the record contains evidence upon the basis of which a reasonable trier of fact could have concluded as the jury did." (footnote omitted)).[2]

■ The scope of our inquiry on appeal is likewise guided by the *Burdine-Aikens* rationale. Because the ultimate issue, that of discrimination *vel non*, is to be treated by district and appellate courts in the same manner as any other issue of fact, *see Aikens*, 103 S.Ct. at 1482, our review is subject to the "clearly erroneous" standard of Fed. R.Civ.P. 52(a). *See Pullman-Standard v. Swint*, 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982); *Carroll v. Sears, Roebuck & Co.*, 708 F.2d 183 (5th Cir.1983); *Everitt v. City of Marshall*, 703 F.2d 207 (5th Cir.1983). As articulated in *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 99 L.Ed. 746 (1948), that standard provides that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

With these precepts in mind, we turn to the case at hand. The extent to which we assess the proceedings below according to the *McDonnell Douglas* order of proof is directed only by the format in which the parties' arguments are presented. *See Elliott, supra*, at 565.

■ The evidence at the trial established that Williams is black and that she was discharged by Bell. Her assertion that the discharge was motivated, not by her alleged misconduct, but by racially discriminatory intent was supported by the testimony of various witnesses that no white teller had ever been discharged for the kind of error of which she was suspected. There was, however, testimony indicating that errors of this kind were rare, and that all similar incidents had in the past been resolved by a satisfactory explanation. There was also evidence that several customers had complained of a discrepancy between the amount they had paid and the amount recorded by Bell. As a result of these complaints, Bell undertook an investigation, consisting of interviews with the disgruntled customers and the taking of a statement from Williams. The trial court found that the situation involving Williams was unique, and that her treatment was a result of this uniqueness rather than any prohibited intent. We do not find that this determination was clearly erroneous.[3] There was ample evidence adduced at trial to support the finding that Williams' race was incidental to her discharge, and that Bell was motivated not by her race but by its suspicions with regard to her honesty. Clearly this is an adequate and nondiscriminatory reason for Bell's action.

■ Although Williams urges us to hold that, because Bell's actions were purportedly based on her misappropriation of funds, we should require Bell to submit "actual proof" of such defalcation, we decline to so hold. As the trial court correctly noted, a Title VII case is not the appropriate forum in which to require or evaluate such proof. The trier of fact is to determine the defendant's intent, not adjudicate the merits of the facts or suspicions upon which it is predicated.

The decision of the district court is AFFIRMED.

---

**2.** Although *Elliott* involved the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, rather than Title VII, the two statutes are construed consistently and the case law of each is frequently applied to the other. *See Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 99 S.Ct.

2066, 60 L.Ed.2d 609 (1979); *Elliott, supra*, at 557 n. 1.

**3.** As noted *supra*, errors resulting in shortages or excess money were relatively commonplace and were not the basis for disciplinary action for whites or blacks.