Henry IRBY, et al., Plaintiffs-Appellants, Cross-Appellees,

v.

Mike SULLIVAN, Jr., et al., Defendants-Appellees, Cross-Appellants.

No. 82–1566.

United States Court of Appeals,
Fifth Circuit.

Aug. 6, 1984.

Robert E. Hedicke, Dan L. Armstrong, El Paso, Tex., for plaintiffs-appellants, cross-appellees.

Luther Jones, County Atty., Todd D. Chenoweth, Asst. County Atty., El Paso, Tex., for defendants-appellees, cross-appellants.

Before GEE and GARWOOD, Circuit Judges, and EAST *, District Judge.

GARWOOD, Circuit Judge:

This is an appeal in an action alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and of 42 U.S.C. §§ 1981, 1983, and 1985(c) [42 U.S.C.A. § 1985(3)]. Plaintiffs are four black former employees of the El Paso County Sheriff's Department and an unsuccessful black applicant for employment with the Department. Defendants are the County of El Paso, Texas, the County Sheriff's Department, the County Sheriff and former County Sheriff, and three Sheriff's Deputies. No class action is involved. Plaintiffs sought back pay and emotional damages. They did not seek employment, reinstatement, or other equitable relief. Following a three-day bench trial, the district court entered Findings of Fact and Conclusions of Law in favor of plaintiff Henry Irby's Title VII claim and denying all other claims. Irby was awarded $1,460 in back pay, and attorneys' fees.

Plaintiffs have appealed on various grounds. Plaintiffs Irby, Robert L. Wilson, and Wallace W. Brown assert that the Sheriff's Department violated the equal protection and due process clauses of the Fourteenth Amendment by failing to provide them hearings before they were fired from the Department, and they appeal the district court's denial of relief under 42 U.S.C. § 1983 on that ground. Plaintiff James A. Trabue challenges the court's finding that defendants did not deny him an employment application because of his

* District Judge of the District of Oregon, sitting by designation.

race in violation of 42 U.S.C. § 1983, and plaintiff Brown contests the sufficiency of the evidence supporting the district court's finding that he was not fired in retaliation for filing a Title VII complaint before the federal Equal Employment Opportunity Commission (EEOC). Finally, plaintiffs Irby and Alvin M. Johnson assert that the district court applied an improper standard and rendered irreconcilable findings of fact and conclusions of law in denying their claims under section 1983. Plaintiffs do not contest the denial of their claims under 42 U.S.C. §§ 1981 and 1985(3).[1] Defendants also appeal the district court's judgment in favor of Irby, which was based on a finding of retaliatory firing in violation of Title VII. Defendants allege they were not given adequate notice of that claim.

Because the district court erred in failing to find that Irby's retaliatory firing violated section 1983, we reverse the denial of Irby's claim under that statute. We also hold that the district court did not adequately articulate the basis for its denial of the section 1983 claim of plaintiff Johnson. Therefore, we vacate that portion of the district court's judgment denying Johnson's claim and remand for further findings of fact and conclusions of law. We affirm the remainder of the district court's judgment.

## I.

### ABSENCE OF HEARING

■ Plaintiffs Irby, Wilson, and Brown claim that they were denied equal protection and due process of law by the failure of the Sheriff's Department to grant them hearings before they were dismissed.[2] We disagree. Public employees are entitled to pretermination hearings under the due process clause of the Fourteenth Amendment only if they have a cognizable property or liberty interest in continued employment. *Board of Regents v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *Price v. City of Junction, Texas*, 711 F.2d 582, 589 (5th Cir.1983); *Broadway v. Block*, 694 F.2d 979, 985 (5th Cir.1982); *White v. South Park Independent School District*, 693 F.2d 1163, 1166 (5th Cir.1982). A protected property interest in employment exists only if the employee has "a legitimate claim of entitlement to" continued employment. *Roth* 408 U.S. at 577, 92 S.Ct. at 2709; *Conley v. Board of Trustees of Grenada County Hospital*, 707 F.2d 175, 179 (5th Cir.1983). The property interest can emanate from a statute, local ordinance, or rule, or from a mutually explicit understanding. *Perry v. Sindermann*, 408 U.S. 593, 601–02, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570 (1972); *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *White v. Mississippi State Oil and Gas Board*, 650 F.2d 540, 541 (5th Cir.1981); *Conley* at 179. "In either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law." *Bishop*, 426 U.S. at 344, 96 S.Ct. at 2077.

■ Texas law gives sheriffs, and other elected county officials, virtually unbridled authority in hiring and firing their employees. *Murray v. Harris*, 112 S.W.2d 1091 (Tex.Civ.App.—Amarillo 1938, writ dism'd); *Barrett v. Thomas*, 649 F.2d 1193, 1199 (5th Cir.1981), *cert. denied sub nom.*,

1. The district court also declined to award punitive damages to any plaintiff. Plaintiffs do not challenge such denial on appeal.

2. Plaintiffs also complain that the district court failed to render findings of fact and conclusions of law on this issue, as required by Fed.R.Civ.P. 52(a). We agree that "it would have been helpful and appropriate for the judge below to have made more particular findings and to refer in [his] opinion to the appropriate legal analysis." *Gupta v. East Texas State University*, 654 F.2d 411, 415 (5th Cir.1981). Nevertheless, the district court's failure to make these findings "does

not require remand where the omitted findings would not change the outcome of the [case]." *Guidry v. Texaco, Inc.*, 430 F.2d 781, 784 (5th Cir.1970). *Accord, Weber v. McKee*, 215 F.2d 447, 451 (5th Cir.1954); *Ginsberg v. Royal Insurance Company*, 179 F.2d 152, 153 (5th Cir.1950). Because we find as a matter of law that the record in this case does not support plaintiffs' due process and equal protection claims, the district court's failure to render specific findings of fact and conclusions of law on this issue was harmless error. Fed.R.Civ.P. 61.

456 U.S. 925, 936, 102 S.Ct. 1969, 1992, 72 L.Ed.2d 440, 455 (1982); *White v. Thomas*, 660 F.2d 680, 684 (5th Cir.1981), *cert. denied*, 455 U.S. 1027, 102 S.Ct. 1731, 72 L.Ed.2d 148 (1982); *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir.1980). Under Tex.Rev.Civ.Stat.Ann. art. 6869 (Vernon 1960), sheriff's deputies serve "during the pleasure" of the sheriff. "It follows that deputy sheriffs have no legal entitlement to their jobs as public employees; the sheriff may fire them for many reasons or for no articulable reason at all."[3] *Barrett* at 1199. *Accord, McBee v. Jim Hogg County, Texas*, 730 F.2d 1009, 1010 n. 2 (5th Cir.1984) (en banc); *Murray* at 1093–94. Plaintiffs, therefore, lacked any property interest in their continued employment.[4] Plaintiffs do not assert that their dismissal deprived them of a constitutionally protected liberty interest, nor is there any evidence in the record which would support such an assertion.

Plaintiffs Irby, Brown and Wilson also allege that they were denied equal protection of the laws by the absence of pretermination hearings. They assert that a Texas statute guarantees to city employees the right to such a hearing,[5] and that "as a matter of equal protection of the laws, the right should be extended to individuals employed by county governments." Assuming, *arguendo*, that a county or its officials or employees can be liable for an equal protection violation based on allegedly improper classifications made by state statutes, we find no such improper classification here.

The test for scrutinizing state policies like the one at issue here is well-settled:

" 'Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest.' " *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976), quoted in *Laird v. Board of Trustees of the Institutions of Higher Learning*, 721 F.2d 529, 532 (5th Cir.1983).

 Employees of county governments do not comprise a suspect class, and

---

3. The record indicates that Irby and Brown were sworn deputies. Although plaintiff Wilson was only a probationary employee at the time of his firing, none of the plaintiffs, including Wilson, dispute that article 6869 applies to them.

4. At oral argument before this Court, plaintiffs' counsel contended for the first time that Sheriff's Department regulations prohibited the dismissal of an employee without a hearing. In support of that contention, counsel cited a "policy letter," signed by Brown, which granted him the right to appeal a grievance to the Sheriff and then request a hearing before the County Commissioners Court. There is no evidence that Irby or Wilson signed such a letter.

Assuming, *arguendo*, that this policy letter applied to Brown's dismissal, plaintiffs' contention still cannot prevail. Brown made no request for a hearing, and thus whatever safeguards were afforded him by the policy statement could not be triggered. Furthermore, the Sheriff had no authority under state law to abrogate "the important option placed in him by law to terminate the employment [of his deputies] at his will or pleasure." *Murray v. Harris*, 112 S.W.2d 1091, 1093 (Tex.Civ.App.—Amarillo 1938, writ dism'd). To the extent that the policy

statement reduced that authority, "it would be void and of no force or effect." *Id.* at 1094. *Cf. Hix v. Tuloso-Midway ISD*, 489 S.W.2d 706, 710 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n.r.e.) (school district cannot have tenure policy contrary to state law); *Burris v. Willis ISD*, 713 F.2d 1087, 1091 (5th Cir.1983) (same); *Guerra v. Roma ISD*, 444 F.Supp. 812, 818 (S.D.Tex.1977) (Gee, Circuit Judge) (same). Finally, "merely conditioning an employee's removal on compliance with certain specified procedures" does not necessarily mean that an employee has a substantive property right in continued employment. *See Bishop v. Wood*, 426 U.S. 341, 345, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976).

5. Article 1006, Tex.Rev.Civ.Stat.Ann. (Vernon 1963), provides as follows:

"The city council shall have power to remove any officer for incompetency, corruption, misconduct or malfeasance in office, after due notice and an opportunity to be heard in his defense. The city council shall also have power at any time to remove any officer of the corporation elected by them, by resolution declaratory of its want of confidence in said officer; provided, that two-thirds of the aldermen elected vote in favor of said resolution."

the holding of public employment "is not a recognized fundamental right." *Arceneaux v. Treen,* 671 F.2d 128, 133 (5th Cir. 1982), citing *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 313, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976). Therefore, we review the classification here under the "rational basis" test. "In such a situation, 'the burden is not upon the state to establish the rationality of its restriction, but is upon the challenger to show that the restriction is wholly arbitrary.'" *Kite v. Marshall,* 661 F.2d 1027, 1030 (5th Cir. 1981), *cert. denied,* 457 U.S. 1120, 102 S.Ct. 2934, 73 L.Ed.2d 1333 (1982), quoting *Karr v. Schmidt,* 460 F.2d 609, 617 (5th Cir.) (en banc), *cert. denied,* 409 U.S. 989, 93 S.Ct. 307, 34 L.Ed.2d 256 (1972). We must ask whether "'any state of facts reasonably may be conceived to justify'" the challenged distinction. *McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961), quoted in *Pappanastos v. Board of Trustees of the University of Alabama,* 615 F.2d 219, 221 (5th Cir. 1980). We do not consider here whether article 1006 or any other Texas statute guarantees city employees under all circumstances the right to a pretermination hearing, or the extent of that guarantee. *See Bell v. Gayle,* 384 F.Supp. 1022, 1025 (N.D.Tex.1974). Assuming such a guarantee exists, the failure to extend it to county employees was not irrational.

We have recognized that the elected county official occupies a singular place in Texas government. "Because of the unique structure of county government in Texas," the sheriff, like other elected county officials, "holds virtually absolute sway over the particular tasks or areas of responsibility entrusted to him by state statute and is accountable to no one other than the voters for his conduct therein." *Familias Unidas v. Briscoe,* 619 F.2d at 404. The legislature might well have rationally concluded that the effect of requiring a pretermination hearing for county employees, even if such a right is afforded city employees, would be to undermine the uniquely broad discretion granted elected county officials. The equal protection clause does not require that all public employees be treated alike. *Clements v. Fashing,* 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982); *Vance v. Bradley,* 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979); *Arceneaux v. Treen, supra.* Our holding in this respect disposes of all of plaintiff Wilson's claims on appeal. We next severally consider the remaining claims of plaintiffs Brown and Irby, and the claims of plaintiffs Trabue and Johnson.

## II.

### JAMES TRABUE

Plaintiff Trabue brought suit against the Sheriff's Department and the County of El Paso under 42 U.S.C. §§ 1981 and 1983. He contends on appeal that the district court erred by not finding that defendants had intentionally violated Title VII and section 1983 by their failure to supply him with an employment application upon request. Because Trabue did not assert a Title VII claim at trial, we consider only his claim under section 1983.[6]

Trabue testified at trial that he had visited the El Paso County Sheriff's Department offices on six occasions between September 1976 and September 1978 to request an application form. He testified that he spoke to an unidentified uniformed officer during one of those visits, and to Audrey Bryson, an administrative assistant

---

6. Trabue does not challenge the district court's finding that he sought at trial only damages for mental anguish and emotional distress under 42 U.S.C. §§ 1981 and 1983. It is generally held that a plaintiff may not recover damages for mental suffering or emotional distress under Title VII. *Whiting v. Jackson State University,* 616 F.2d 116, 122–23 n. 4 (5th Cir.1980); *Miller v. Texas State Board of Bar Examiners,* 615 F.2d 650, 654 (5th Cir.), *cert. denied,* 449 U.S. 891, 101 S.Ct. 249, 66 L.Ed.2d 117 (1980); *Walker v. Ford Motor Co.,* 684 F.2d 1355, 1363–65 (11th Cir.1982). In response to defendants' motion for summary judgment, plaintiffs' counsel conceded that Trabue sought no Title VII relief. Plaintiff may not raise a claim on appeal that he has not asserted below. *Shields v. Hopper,* 519 F.2d 1131, 1133 (5th Cir.1975); *United States v. West Peachtree Tenth Corp.,* 437 F.2d 221, 223 n. 1 (5th Cir.1971).

in the Department, during the other visits. Trabue stated that on each of those occasions he was told either that no positions were open and that in any event the Department already had enough applicants, or that no application forms were available. The Sheriff's Department hired at least three new white employees during this period.

Bryson testified that she gave application forms to anyone who requested them, even when the Sheriff's Department had no job vacancies. She said she remembered only one visit by Trabue and that she did not give him an application form at that time because she had run out of them. Mike Sullivan, who served as County Sheriff until August 14, 1978, and Ray Montes, who succeeded Sullivan, testified that their policy was to provide job applications to anyone who requested them. Trabue never spoke to either Sullivan or Montes during his visits to the Department.

██ The district court found that Trabue had failed to prove his claim under sections 1981 or 1983, and that neither Montes, Sullivan, the Sheriff's Department, nor the County maintained a "policy against the employment of blacks in the Sheriff's Department between 1976 and 1978." In reviewing the court's findings, we note that the plaintiff bears the burden of persuasion that he has been the victim of intentional discrimination by the defendants. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101

S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981); *Redditt v. Mississippi Extended Care Centers, Inc.*, 718 F.2d 1381, 1385 (5th Cir. 1983); *Williams v. Southwestern Bell Telephone Co.*, 718 F.2d 715, 717 (5th Cir. 1983).[7] The district court's finding on the ultimate factual issue of intentional discrimination is subject to the "clearly erroneous" standard of review of Fed.R.Civ.P. 52(a). *Pullman-Standard v. Swint*, 456 U.S. 273, 287–88, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982); *Carroll v. Sears, Roebuck & Co.*, 708 F.2d 183 (5th Cir.1983); *Williams* at 718; *Redditt* at 1385.

Trabue attacks the district court's ultimate finding that defendants did not intentionally discriminate against him and challenges several subsidiary factual findings of the district court.[8] We need not decide whether these subsidiary findings are erroneous, because they are not dispositive of Trabue's discrimination claim. The crux of that claim is the alleged refusal of two Sheriff's Department employees to allow him to apply for work with the Department. Neither employee is named as a defendant in this case. Citing Tex.Rev.Civ. Stat.Ann. art. 6870 (Vernon 1962), which makes sheriffs responsible for the "official acts of their deputies," Trabue asserts that Sheriffs Sullivan and Montes are vicariously liable under section 1983 for the discriminatory actions of their subordinates. Therefore, presumably the County is also liable.[9] However, we have held that state

---

7. The district court cited *General Building Contractors v. Pennsylvania*, 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982), for the proposition that a showing of intent to discriminate is necessary to establish a violation of sections 1981 or 1983. Although *General Building Contractors* dealt only with section 1981, a showing of intent is required to prove a racial discrimination claim under either statute. *Id.* at 391, 102 S.Ct. at 3150, 73 L.Ed.2d at 849; *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

8. The district court found that three white individuals hired by the Sheriff's Department in 1977 were employed under the Comprehensive Employment and Training Act (CETA). The record does not appear to support this finding, although the record does not establish whether

these were the only individuals hired outside the CETA program by the Department during that period. The district court also found that the Sheriff's Department hired blacks between 1976 and 1978 outside the CETA program.

9. We stated in *Familias Unidas v. Briscoe*, 619 F.2d 391 (5th Cir.1980), that where a county official "is the final authority or ultimate repository of county power, his official conduct and decisions must necessarily be considered those of one 'whose edicts or acts may fairly be said to represent official policy' for which the county may be held responsible under section 1983." *Id.* at 404. While it is thus arguable that a sheriff's liability for unconstitutional acts would extend to the county, because we find neither Sheriffs Sullivan nor Montes liable on Trabue's claim, we do not reach this issue or the Elev-

law cannot, *ex proprio vigore*, impose vicarious section 1983 liability on a sheriff for the acts or omissions of his employees. *Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir.1979); *Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120, 123 (5th Cir. 1980); *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir.1981); *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir.1983).[10]

■ "To be liable under section 1983, a sheriff must be either personally involved in the acts causing the deprivation of a person's constitutional rights, or there must be a causal connection between an act of the sheriff and the constitutional violation sought to be redressed." *Lozano* at 768, citing *Douthit* at 346. Trabue does not allege, and the record does not suggest, that either Sheriffs Sullivan or Montes were personally involved in the allegedly discriminatory actions against Trabue. Nor does Trabue allege the existence of a causal connection between the claimed discrimination and any acts by either Sheriff.

"A causal connection may be established, for section 1983 purposes, where the constitutional deprivation and practices occur as a result of the implementation of the sheriff's affirmative wrongful policies by his subordinates, *Wanger v. Bonner*, 621 F.2d 675, 679 (5th Cir.1980), or where the sheriff wrongfully breaches an affirmative duty specially imposed upon him by state law, and as a result thereof, the complained of constitutional tort occurs. *Barksdale v. King*, 699 F.2d 744, 746 (5th Cir.1983). *Douthit*,

641 F.2d at 346; *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir.1976)." *Lozano* at 768.

There is no evidence in the record contradicting the testimony of Sullivan and Montes that their policy was for job applications to be distributed on a nondiscriminatory basis, and Trabue cites no breach by them of any specific affirmative duty under state law. Thus, we find no basis for holding defendants liable for the acts of discrimination alleged by Trabue, and the district court's findings on Trabue's claim cannot be termed clearly erroneous.

### III.

### WALLACE BROWN

Plaintiff Brown was employed by the Sheriff's Department as a criminal investigator and warrant officer. He was fired on November 15, 1978, twelve days after he filed a Title VII discrimination complaint against the department with the EEOC. Brown claims that he was fired in retaliation for the filing of that complaint. The district court found to the contrary that Brown was fired because of his record of insubordination, culminating in an incident on November 13, 1978 in which Brown insulted a superior. Brown questions the sufficiency of the evidence supporting the district court's finding.[11]

Section 704(a) of Title VII prohibits an employer from acting against an employee in retaliation for the filing of a discrimina-

---

enth Amendment questions it raises. *See Lozano v. Smith*, 718 F.2d 756, 768 n. 28 (5th Cir. 1983).

A county may not be held liable under section 1983 on a theory of *respondeat superior*. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *Bennett v. City of Slidell*, 728 F.2d 762, 766 (5th Cir.1984) (en banc).

**10.** We have not distinguished between state statutes, rules, or common law doctrines in holding "that state vicarious liability doctrines are inapplicable in § 1983 suits." *Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir.1979). In *Baskin*, for instance, we held that a Louisiana sheriff could

not be held vicariously liable for an unconstitutional search by his deputies, despite the existence at the time of the search of a Louisiana statute subjecting a sheriff to liability for " 'any act or tort committed by one of his deputies.' " *Id.* at 1215 n. 9 (Rubin, J., dissenting).

**11.** On appeal, defendants assert that they were not given sufficient notice of the retaliation claims of plaintiffs Brown and Irby. Plaintiffs' complaint and the pretrial order, however, specifically recite the allegation that black employees were dismissed by defendants in retaliation for complaints "regarding transfer and promotion policies." Thus, defendants were given sufficient notice of the retaliation claims.

tion charge by the employee.[12] The order and allocation of proof for Title VII cases articulated in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine, supra*, 450 U.S. at 252–58, 101 S.Ct. at 1093–96, apply to actions for unlawful retaliation under section 704(a). *McMillan v. Rust College, Inc.*, 710 F.2d 1112, 1116 (5th Cir.1983); *DeAnda v. St. Joseph Hospital*, 671 F.2d 850, 856 (5th Cir.1982).

"Applying these standards to a retaliation case, the plaintiff must first establish a prima facie case of retaliation by showing (1) that [he] engaged in an activity protected by Title VII; (2) that an adverse employment action occurred; and (3) that there was a causal connection between the participation in the protected activity and the adverse employment decision. Once the prima facie case is established, the burden of producing some nondiscriminatory reason falls upon the defendant. The employee then assumes the burden of showing that the reasons given were a pretext for retaliation." *McMillan* at 1116 (citations omitted).

When, however, the case has been fully tried on the merits, the trial court is in a position to decide the ultimate factual issue in the case. *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403, 410 (1983); *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095; *Williams v. Southwestern Bell Telephone Co., supra*, 718 F.2d at 717. That issue is whether or not, "but for" the protected activity, any adverse action would have been taken. *McMillan* at 1117–18; *DeAnda* at 857 n. 12. The plaintiff may meet his ultimate burden of persuasion "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proferred explanation is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. "In either case, the trier of fact must then determine which explanation, employer's or employee's, is the more persuasive." *Williams* at 717.

The district court in this case believed the defendants' explanation, concluding that the dismissal of Brown did not result from any retaliatory motive. The court found:

"The evidence as a whole shows that between June and November, 1978, Brown had become a disruptive force within the Sheriff's Department. He had antagonized and offended co-workers, members of other law enforcement agencies, and members of the public. His insubordination reached the point of cursing and threatening superiors within the Department. The Court finds that Brown's discharge was based upon these reasons, and was not an act of retaliation for the filing of an EEOC charge."[13]

---

**12.** Section 704(a), 42 U.S.C. § 2000e–3(a), reads in pertinent part:

"It shall be an unlawful employment practice for an employer to discriminate against any of his employees … because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

**13.** In its Conclusion of Law, the district court found:

"Brown has failed to establish a prima facie case of retaliation prohibited by 42 U.S.C. § 2000e–3(a), in that he has failed to show a causal connection between the filing of his EEOC charge of discrimination and his dis-

charge. In the alternative, he has not carried his burden of showing pretext by establishing that 'but for' the filing of the charge of discrimination, he would not have been discharged." (Citations omitted).

In this one passage, the district court "erroneously focused on the question of *prima facie* case rather than directly on the question of discrimination." *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 1483, 75 L.Ed.2d 403, 411 (1983). However, the district court also went on to address the ultimate question of retaliation, concluding that "Brown had become the Hollywood Henderson of the Sheriff's Department, and was discharged for the legitimate, non-discriminatory reason that his disruptive activities and insubordination could no longer be tolerated." We do not perceive that the court's error in any

In reviewing the ultimate finding that there was no retaliatory discharge, as well as the district court's subsidiary findings, we again must apply the "clearly erroneous" standard of Fed.R.Civ.P. 52(a). *McMillan* at 1116.

 In the several months prior to his dismissal, Brown had received at least two reprimands from his superiors for improper conduct during criminal investigations. There was testimony that the first reprimand, issued in June 1978, was instigated by Brown's use of profanity and his uncooperative attitude during two rape and burglary investigations. The second reprimand, issued on September 20, 1978, was prompted by two incidents during a criminal investigation in which Brown appeared for duty in improper attire, and by other misconduct during the investigation.[14]

On November 6, 1978 Brown was denied access to departmental records pertaining to ongoing criminal investigations. There is sufficient evidence to conclude that the denial of access was not related to the filing of the EEOC complaint by Brown.[15] On November 13 Brown confronted then Chief Sheriff's Deputy Mac Stout concerning the November 6 order and used derogatory language toward him.[16] There is no evidence that Brown was engaged in any activity protected by Title VII while attempting to gain access to the departmental records or confronting Stout.

Our review of the record convinces us that the evidence before the district court was amply sufficient to find that these instances of misconduct by Brown, not the filing of the EEOC complaint, precipitated Brown's dismissal. The district court's finding to this effect was not clearly erroneous.

## IV.

## HENRY IRBY

The district court found that defendants Sheriff's Department and El Paso County dismissed plaintiff Irby from his position as a detention officer in the El Paso County Jail in retaliation for the filing of an EEOC charge. The court held that the dismissal violated section 704(a) of Title VII and it awarded back pay and attorneys' fees. It also held, however, that Irby failed to prove he was the victim of intentional racial discrimination,[17] and thus could not recover damages under 42 U.S.C. §§ 1981, 1983 or 1985(c). Irby argues on appeal that proof of the retaliatory firing necessarily established a violation of section 1983. He seeks emotional damages and additional attorneys' fees for the section 1983 violation.[18] We conclude that the district court erroneously denied Irby's claim under section 1983, and we reverse.

 It is now well-settled that section 1983 does not create any substantive rights. Rather, it creates only a remedy for violations of rights secured by federal statutory and constitutional law. *Chapman v. Houston Welfare Rights Organi-*

---

way altered its final conclusion (or its specific fact-finding quoted in the text), and thus there is no need to remand because of the error.

**14.** Brown was transferred from the criminal division to the warrant division of the Sheriff's Department two days after receiving the second reprimand.

**15.** Defendant Jesus Reyes, Brown's superior in the Sheriff's Department, testified that he ordered only that Brown be denied permission to *remove* original records from the records section. The decision to deny Brown all access to the records apparently was made by a subordinate who misunderstood Reyes' order. Reyes testified that he acted in order to protect the records from loss. The trial record does not clearly establish whether Reyes even knew of the EEOC complaint before Brown's dismissal.

**16.** There was testimony that Brown told Stout on November 13: "He [Brown] would drag [Stout's] big fat ass over to the federal courthouse."

**17.** Irby claimed at trial that he was denied promotions and discharged because of his race. In unchallenged findings, the district court rejected that assertion and found that "[t]here was no overall policy of nonpromotion of Black employees within the Sheriff's Department ...."

**18.** Irby has not specifically appealed the district court's holding that he did not prove a violation of sections 1981 and 1985(c).

*zation*, 441 U.S. 600, 617–18, 99 S.Ct. 1905, 1915–16, 60 L.Ed.2d 508 (1979); *Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980); *Nilsen v. City of Moss Point, Mississippi*, 701 F.2d 556, 559 n. 3 (5th Cir.1983) (en banc). Irby argues that because "the § 1983 remedy broadly encompasses violations of federal statutory ... law," [19] *Thiboutot*, 448 U.S. at 4, 100 S.Ct. at 2504, he is entitled to seek damages under section 1983 for a violation of the retaliation prohibition, section 704(a), of Title VII. "The [Supreme] Court, however, has recognized two exceptions to the application of section 1983 to statutory violations." *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 19, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981). *See Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981). First, section 1983 does not afford a remedy for violations of a statute unless the statute creates "a 'right secured' by the laws of the United States within the meaning of § 1983." *Halderman* at 28, 101 S.Ct. at 1545. *Accord, Middlesex County Sewerage Authority*, 453 U.S. at 19, 101 S.Ct. at 2626. Second, section 1983 is not available "where the 'governing statute provides an exclusive remedy for violations of its terms.'" *Halderman*, 451 U.S. at 28, 101 S.Ct. at 1545, quoting *Thiboutot*, 448 U.S. at 22 n. 11, 100 S.Ct. at 2514 n. 11 (Powell, J., dissenting). *Accord, Middlesex County Sewerage Authority*, 453 U.S. at 19–20, 101 S.Ct. at 2626; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 n. 5, 90 S.Ct. 1598, 1604, n. 5, 26 L.Ed.2d 142 (1970); *Marvin H. v. Austin Independent School District*, 714 F.2d 1348, 1358 (5th Cir.1983). "When the remedial devices provided in [the] particular Act are sufficiently comprehensive," a congressional intention that those remedies be exclusive may be inferred. *Middle-*

*sex County Sewerage Authority*, 453 U.S. at 20, 101 S.Ct. at 2626.

Title VII, of course, creates rights secured by the laws of the United States. However, the Supreme Court's decision in *Great American Federal Savings & Loan Association v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), compels the conclusion that Title VII provides the exclusive remedy for a violation of the terms of section 704(a) of that Act. Therefore, the rights created by section 704(a) may not be asserted within the remedial framework of section 1983. *Id.* at 377, 99 S.Ct. at 2351. *Novotny* held that a person alleging a conspiracy to violate section 704(a) of Title VII may not assert that claim under 42 U.S.C. § 1985(c). *Novotny* at 372, 378, 99 S.Ct. at 2349, 2352. Section 1985(c), enacted as section 2 of the Civil Rights Act of 1871, prohibits individuals from conspiring to deprive another of "the equal protection of the [law], or of equal privileges and immunities under the laws." Although section 1985(c) differs substantially from section 1983, both statutes are identical in one critical respect: neither provides any substantive rights; they merely provide remedies for violations of the rights they designate. *Novotny* at 372, 99 S.Ct. at 2349; *Chapman*, 441 U.S. at 617–18, 99 S.Ct. at 1915–16.

In *Novotny*, the Court examined the comprehensive remedial scheme contained in Title VII, including its requirements for utilization of local and state remedies and the administrative procedures of the EEOC; express time limitations for administrative and judicial filings; the grant of conciliatory, investigatory and prosecutorial powers to the EEOC; and the specification of remedies, including attorneys' fees, back pay, reinstatement, and other equitable relief. *Id.*, 442 U.S. at 373–75, 99 S.Ct. at 2349–50. The Court concluded: "If a violation of Title VII could be asserted

---

**19.** Section 1983 reads as follows:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other per-

son within the jurisdiction thereof to the deprivation of *any rights, privileges, or immunities secured by the Constitution and laws,* shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." (Emphasis added).

through § 1985(c), a complainant could avoid most if not all of these detailed and specific provisions of the law." *Id.* at 375–76, 99 S.Ct. at 2350–51.

We perceive no logical basis for distinguishing the claim asserted in *Novotny* from Irby's contention that section 1983 provides a remedy for violation of the retaliation provision of Title VII. Allowance of such a remedy through section 1983 likewise would enable a complainant to sidestep the "detailed and specific provisions" of Title VII. Like section 1985(c), section 1983 authorizes compensatory and punitive damages, which may not be available under Title VII. *Novotny* at 375–76, 99 S.Ct. at 2350–51; *Miller v. Texas State Board of Bar Examiners,* 615 F.2d 650, 654 (5th Cir.), *cert. denied,* 449 U.S. 891, 101 S.Ct. 249, 66 L.Ed.2d 117 (1980); *Whiting v. Jackson State University,* 616 F.2d 116, 122–23 n. 4 (5th Cir.1980). In an action under sections 1983 or 1985(c), a plaintiff may demand a jury trial, a right not available under Title VII. *Novotny,* 442 U.S. at 375–76, 99 S.Ct. at 2350–51; *Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122, 1125 (5th Cir.1969). The "short and precise time limitations of Title VII" do not apply in actions under sections 1983 or 1985(c). *Novotny,* 442 U.S. at 373, 376, 99 S.Ct. at 2349, 2351; *O'Sullivan v. Felix,* 233 U.S. 318, 34 S.Ct. 596, 58 L.Ed. 980 (1914). "Perhaps most importantly," if a violation of Title VII could be asserted through either sections 1985(c) or 1983, "the complainant could completely bypass the administrative process, which plays such a crucial role in the scheme estab-lished by Congress in Title VII." *Novotny,* 442 U.S. at 376, 99 S.Ct. at 2351. Therefore, we conclude that "[u]nimpaired effectiveness can be given to the plan put together by Congress in Title VII only by holding that deprivation of a right created by Title VII cannot be the basis for a cause of action under § [1983]." [20] *Id.* at 378, 99 S.Ct. at 2352.

Although Irby has cited an incorrect predicate for utilization of the section 1983 remedy, his section 1983 claim need not fail for that reason, for this Court has held that a claim under 42 U.S.C. § 1981 [21] may be based on retaliatory action taken in response to an employee's filing of an EEOC charge or civil rights lawsuit alleging racial discrimination. *Goff v. Continental Oil Co.,* 678 F.2d 593, 598 (5th Cir.1982); *Pinkard v. Pullman-Standard, A Division of Pullman, Inc.,* 678 F.2d 1211, 1229 n. 15 (5th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 954 (1983). *Accord, Caldwell v. National Brewing Company,* 443 F.2d 1044 (5th Cir.1971), *cert. denied,* 405 U.S. 916, 92 S.Ct. 931, 30 L.Ed.2d 785 (1972); *Setser v. Novack Investment Co.,* 638 F.2d 1137, 1147 (8th Cir.), *modified at* 657 F.2d 962 (8th Cir.) (en banc), *cert. denied,* 454 U.S. 1064, 102 S.Ct. 615, 70 L.Ed.2d 601 (1981); *Winston v. Lear-Siegler, Inc.,* 558 F.2d 1266, 1270 (6th Cir.1977). *See also* B. Schlei and P. Grossman, *Employment Discrimination Law* 564 n. 172 (2d ed. 1983) (citing cases). The *Goff* panel concluded that if we were not to allow such a claim,

"... we would in effect be discouraging the filing of meritorious civil rights suits

---

**20.** In concluding that the holding in *Great American Federal Savings & Loan Association v. Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), applies to Irby's assertion of Title VII rights through section 1983, we note that Justice Powell relied on *Novotny* in his dissent in *Maine v. Thiboutot,* 448 U.S. 1, 22 n. 11, 100 S.Ct. 2502, 2514 n. 11, 65 L.Ed.2d 555 (1980) for the proposition that *section 1983* may not be utilized where the "governing statute provides an exclusive remedy for violations of its terms." Justice Powell's statement was adopted by a majority of the Court in *Pennhurst State School & Hospital v. Halderman,* 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981).

**21.** Section 1981 provides as follows:

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

and sanctioning further discrimination against those persons willing to risk their employer's vengeance by filing suits. Section 1981 would become meaningless if an employer could fire an employee for attempting to enforce his rights under that statute." 678 F.2d at 598.[22]

■ In *Goff,* we held that the elements of a retaliation claim under section 1981 are essentially the same as those establishing retaliation under section 704(a) of Title VII. *Id.* at 599. *See, e.g., McMillan v. Rust College, Inc., supra,* 710 F.2d at 1116. Because the district court's unchallenged findings establish that Irby was the victim of retaliation in violation of section 704(a), we must hold that a violation of section 1981 also has been established. Thus, although Title VII may not provide the source of a claim of retaliatory discharge under section 1983, section 1981 may. The district court erred in denying Irby's claim under sections 1981 and 1983 based on the absence of intentional racial discrimination.[23]

## V.

## ALVIN JOHNSON

Plaintiff Johnson was an El Paso County Deputy Sheriff for approximately ten years until his resignation in August 1977. On appeal, Johnson claims the district court erred in failing to award him emotional damages for violation of section 1983 by defendants Sullivan, County of El Paso, and the Sheriff's Department. Johnson alleges he was intentionally discriminated against on the basis of race by Sullivan's failure to promote him to the position of jail captain.[24]

---

**22.** To establish a violation of section 1981, discriminatory animus based on race or other "non-white" status ordinarily must be proven. *See General Building Contractors v. Pennsylvania,* 458 U.S. 375, 382–391, 102 S.Ct. 3141, 3145–50, 73 L.Ed.2d 835, 844–49 (1982); *Runyon v. McCrary,* 427 U.S. 160, 167, 170, 96 S.Ct. 2586, 2592, 2594, 49 L.Ed.2d 415 (1976); *Ramirez v. Sloss,* 615 F.2d 163 (5th Cir.1980); *Whiting v. Jackson State University,* 616 F.2d 116, 121–22 (5th Cir.1980); *Grigsby v. North Mississippi Medical Center, Inc.,* 586 F.2d 457, 460–61 (5th Cir.1978); *Shah v. Mount Zion Hospital & Medical Center,* 642 F.2d 268, 272 (9th Cir.1981); *Manzanares v. Safeway Stores, Inc.,* 593 F.2d 968, 971 (10th Cir.1979); B. Schlei and P. Grossman, *Employment Discrimination Law* 674–77 (2d ed. 1983). The Court in *Goff v. Continental Oil Co.,* 678 F.2d 593 (5th Cir.1982), determined that, as in the instant case, the plaintiff had failed to establish his claim that he was the victim of intentional discrimination due to race. Nevertheless, the Court held that the plaintiff could still maintain an action for retaliation under section 1981. The writer of this opinion observes that it may be difficult to square section 1981's requirement of racial motive with the *Goff* holding that section 1981 is violated by a retaliatory discharge even where, as in the instant case, the trial court's unchallenged findings establish that *neither* the discharge *nor* the actions which led to the preceding EEOC complaint were racially motivated. The writer further observes it to be reasonably arguable, where racial animus is wholly lacking, that *Novotny* teaches that Title VII is the exclusive remedy for a retaliatory act taken against the filing of an EEOC complaint. *But see Goff* at 599. However, we are bound by this Court's prior decisions.

**23.** As it may be relevant to the further proceedings contemplated by our remand of this claim of Irby, we note that it has not yet been determined what emotional damages, if any, were suffered by Irby as a result of his discharge. The district court also has not determined whether, under *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and its progeny, El Paso County is a "person" under section 1983, *id.* at 690, 98 S.Ct. at 2035, nor whether it is an agency or department of the State of Texas protected by the Eleventh Amendment. *See Van Ooteghem v. Gray,* 654 F.2d 304, 306 (5th Cir.1981) (en banc), *cert. denied,* 455 U.S. 909, 102 S.Ct. 1255, 71 L.Ed.2d 447 (1982). Finally, the district court has not determined whether Irby's firing was carried out "pursuant to 'official policy' of the county [or sheriff] such as would render the county government liable for [damages] if it was a 'person' under *Monell* and did not enjoy Eleventh Amendment protection." *Van Ooteghem* at 306. *See* note 9, *supra.* We decline to address these issues "without additional factual guidance and an express determination by the district court." *Van Ooteghem* at 306.

**24.** Johnson does not seek reinstatement, and he already has received whatever back pay he might have been entitled to as a result of his nonpromotion.

Johnson joined the Sheriff's Department in 1967 as a detention officer. He was later promoted to sergeant, and in August 1975 Sullivan placed Johnson in charge of the jail on an interim basis. The district court found that Johnson was promoted to lieutenant in October 1975 notwithstanding the fact that he had failed a test for jail captain. He remained in charge of the jail until January 1, 1977, when Sullivan promoted a white male, Sergeant E.C. Riley to jail captain.[25] Johnson was reassigned as Riley's assistant and placed in charge of jail records. Neither Johnson nor Riley were tested for the position of jail captain. Sullivan testified that he promoted Riley over Johnson because the latter had not performed adequately in running the jail.[26] Sullivan denied that Johnson's race was a factor in his decision.[27] In his letter of resignation from the Sheriff's Department addressed to Sullivan, Johnson praised Sullivan as "a person who is interested in human rights," and added, "It has been a pleasure working under your supervision...."[28]

We have held that "when section 1983 is used as a parallel remedy with Title VII in a racial discrimination suit the elements of a cause of action are the same under both statutes," and that "[s]ection 1983 actions challenging racial discrimination under the equal protection clause and Title VII disparate treatment cases both require a showing of discriminatory motive ...." *Lee v. Conecuh County Board of Education,* 634 F.2d 959, 962 (5th Cir. 1981). The district court found that Johnson apparently had established, in regard to Sullivan's failure to promote him to jail captain, an unrebutted *prima facie* case of racial discrimination under the standards enunciated in *McDonnell-Douglas v. Green, supra,* and *Texas Department of Community Affairs v. Burdine, supra.* Yet, the court also expressly found that Johnson had not proven his allegation that Sullivan "was responsible for discriminatory actions which gave rise to mental anguish and emotional harm" because "[t]here is no proof of intentional racial discrimination by Sheriff Sullivan."[29] Be-

---

25. There is no evidence in the record that anyone other than Sullivan was involved in making the promotion decision.

26. Sullivan testified that Johnson "spent a lot of hours" at his job, "work[ing] anywhere from fourteen to sixteen hours a day," but that Johnson was unable to correct numerous problems existing in the jail which earlier had resulted in a federal court order regarding unconstitutional jail conditions. Sullivan cited at least two occasions on which Johnson failed to obey his instructions. Sullivan testified that he promoted Riley over Johnson "because [Johnson] wasn't getting the job done and ... I needed somebody that was [a] heavy."

Riley had worked fulltime for the Sheriff's Department for four to five years at the time of his promotion. He previously had served for approximately ten years in the Sheriff's Reserve. At the time of his promotion, Riley was a "Transfer Officer."

27. Johnson also complained at trial that he was harassed by Riley and then Chief Deputy Palos, neither of whom are defendants in this case, during the period between Riley's promotion to jail captain and Johnson's resignation. However, Johnson does not appeal the district court's denial of relief for this harassment, nor is there any basis for such an award. The record does not indicate that the alleged harassment resulted from the personal involvement, policies, or breach of a statutory duty by Sulli-

van, and defendants cannot be held vicariously liable under section 1983 for the actions of subordinates. *See* part II, *supra,* at 5229–5230.

28. Johnson's letter of resignation read in pertinent part:

"I, Lt. ALVIN M. JOHNSON, am giving notice of my resignation due to some existing conditions and circumstances.

"....

"It has been a pleasure working under your supervision, and I will always remain a personal friend of yours and a great supporter of your ideas. You are a person who is interested in human rights.

"Sheriff, it's people like you who make Executive Orders 11246 and 11478 work, because you were working with humans and protecting their rights prior to the passage of the above Executive Orders in the years of 1964 and 1972."

Johnson testified that the Executive Orders he referred to in his letter prohibited discrimination based on race, religion, or handicap.

29. The district court found as follows:

"1. Plaintiff Johnson has established a prima facie case of discrimination in connection with the promotion of E.C. Riley to Jail Captain instead of Plaintiff in December 1976. See *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248 [101 S.Ct. 1089, 67

cause we are unable to reconcile these findings, and because we believe the district court may have misconceived the proper standards for evaluating a claim of intentional discrimination under section 1983, we remand for further findings of fact and conclusions of law. "In reviewing the district court's [findings] under the clearly erroneous standard, this Court cannot be left to second guess the ... basis for the district court's conclusion." *Redditt v. Mississippi Extended Care Centers, Inc.*, 718 F.2d 1381, 1386 (1983).

As it may have relevance to the further proceedings contemplated by our remand of Johnson's referenced claim, we review the appropriate order of proof and standards for establishing an employment discrimination claim. First, the plaintiff must present a *prima facie* case of discrimination. *See Burdine*, 450 U.S. at 253–54 and n. 6, 101 S.Ct. at 1093–94 and n. 6. The district court found that Johnson had done so in this case, and that finding is not disputed. Establishment of plaintiff's *prima facie* case creates a presumption of discrimination. *Burdine* at 254, 101 S.Ct. at 1094. The burden then shifts to the defendant "to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate nondiscriminatory reason. The defendant need not

persuade the court that it was actually motivated by the proffered reasons." *Id.*

"All the employer need do is to raise a genuine issue of fact as to whether it discriminated against the plaintiff. The defendant raises a factual issue by introducing into evidence a clear and reasonably specific legally sufficient explanation for the discharge of the employee." *Redditt*, 718 F.2d at 1385 (citation omitted).

Sullivan met this burden of rebuttal by stating in detail his reason—Johnson's inadequate job performance—for failing to promote Johnson in place of Riley. At that point, the burden shifted back to plaintiff Johnson to show that Sullivan's explanation was a pretext. That burden merged with Johnson's ultimate burden of persuading the district court that he had been the victim of intentional discrimination. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. At the close of the evidence, the district court was then in a position to decide the ultimate issue of fact, that of discrimination *vel non. Postal Service Board of Governors v. Aikens, supra,* 460 U.S. at 715, 103 S.Ct. at 1482, 75 L.Ed.2d at 410; *Williams v. Southwestern Bell Telephone Co., supra,* 718 F.2d at 717.

On remand, the district court must determine which explanation of the reasons for Johnson's nonpromotion—the employer's or

L.Ed.2d 207] (1981); *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792 [93 S.Ct. 1817, 36 L.Ed.2d 668] (1973). The burden, therefore, shifted to Defendants to articulate a legitimate, nondiscriminatory reason for Johnson's nonpromotion. *Texas Department of Community Affairs v. Burdine, supra.* It is doubtful that Defendants have done so in this case. However, the question is moot. Plaintiff Johnson does not desire reinstatement to the office of Jail Captain, and the difference in pay between the offices of Lieutenant and Captain for the period January–August 1977 has been paid to Johnson by the County by order of the U.S. Office of Revenue Sharing (Def.Ex. L). For the same reason, it is unnecessary to decide whether his resignation amounted to a 'constructive discharge' for Title VII purposes. See *Pittman v. Hattiesburg Municipal Separate School District,* 644 F.2d 1071 (5th Cir.1981).

"2. Plaintiff is not entitled to damages for mental anguish and emotional harm under 42 U.S.C. § 1983. The intentional acts of racial discrimination alleged by Johnson to have caused such harm were performed by Captain Riley and Chief Deputy Palos, neither of whom is a defendant in this suit. Plaintiff cannot assert a right to recover against the Department or the County for the actions of Riley or Palos under a theory of respondeat superior. *Monell v. Department of Social Services,* 436 U.S. 658 [98 S.Ct. 2018, 56 L.Ed.2d 611] (1978). There is no proof of intentional racial discrimination by Sheriff Sullivan, and Johnson's claim in that regard appears to be an afterthought. Both his letter of resignation (Def. Ex. K) and his EEOC charge (Pl. Ex. 2) contradict Johnson's present position that defendant Sullivan was responsible for discriminatory actions which gave rise to mental anguish and emotional harm."

employee's—"is the more persuasive." *Williams* at 717. If the court believes Sullivan, it must enter judgment for defendants on Johnson's section 1983 claim. If the court believes Johnson, however, it must enter judgment for him and determine what damages, if any, for mental anguish and emotional distress are attributable to defendants' discriminatory action.[30]

## CONCLUSION

The denial of plaintiff Irby's claim of retaliatory discharge under 42 U.S.C. § 1983 is reversed and remanded for further proceedings consistent with this opinion. The denial of plaintiff Johnson's claim under section 1983 is vacated and remanded for further proceedings consistent with this opinion. The remainder of the district court's judgment is affirmed.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

---

**30.** It is unclear from Johnson's trial testimony whether he alleged that he was emotionally harmed by his nonpromotion, or whether he alleged such harm resulted solely from the harassment by Palos and Reyes. We leave it to the district court to determine the proper interpretation to be placed on Johnson's testimony. Even if no emotional damages are awarded, Johnson is entitled to nominal damages not to exceed one dollar if he has been the victim of intentional racial discrimination by defendants.

*Carey v. Piphus,* 435 U.S. 247, 266–67, 98 S.Ct. 1042, 1053–54, 55 L.Ed.2d 252 (1978); *Familias Unidas v. Briscoe,* 619 F.2d at 402; *Basiardanes v. City of Galveston,* 682 F.2d 1203, 1220 (5th Cir.1982). The district court has not yet determined whether the County is liable for damages in light of *Monell v. Department of Social Services of the City of New York, supra,* and the Eleventh Amendment. *See* notes 9 and 23, *supra.*