**COALITION FOR ABORTION RIGHTS AND AGAINST STERILIZATION ABUSE, Plaintiff,**

**v.**

**NIAGARA FRONTIER TRANSPORTA-TION AUTHORITY; Raymond F. Gallagher, Chairman, NFTA; John F. Downing, Executive Director, NFTA; Niagara Frontier Transit Metro System, Inc.; J.M. Heinen, Vice-President for Finance, NFTMS, Defendants.**

**No. CIV–83–388C.**

United States District Court, W.D. New York.

Jan. 19, 1984.

National Lawyers Guild, Buffalo Chapter, Buffalo, N.Y. (Ellen M. Yacknin, and Laraine Kelley, Buffalo, N.Y., of counsel), for plaintiffs.

Timothy J. Toohey, Gen. Counsel for Niagara Frontier Transp. Authority, Buffalo, N.Y., (David M. Coffey, Buffalo, N.Y. of counsel), for defendants.

CURTIN, Chief Judge.

The Coalition for Abortion Rights and Against Sterilization Abuse [CARASA] claims that the Niagara Frontier Transportation Authority [NFTA] has improperly denied them access to advertising space on City buses. CARASA seeks both declaratory and injunctive relief for an alleged violation of first and fourteenth amendment rights.

Defendants moved to dismiss. CARASA, thereafter, filed an amended complaint, which shall be permitted under the liberal guidelines of Fed.R.Civ.P. 15. CARASA expanded the prayer for relief to include a claim for compensatory and punitive damages.

Following motion by the plaintiff, the request for injunctive relief was consolidated with a trial on the merits pursuant to Fed.R.Civ.P. 65(a)(2).

## I.

On the scheduled date of trial, this court received a pro se application for intervention from Mr. Carl Frank. Mr. Frank claims an interest in this suit as a bus rider and a member of the Western New York community who is concerned about abortion.

■ First, this "application" was not filed in a timely manner, nor was it properly served on the parties. Fed.R.Civ.P. 24 and 6(d). In addition to these defects, Mr. Frank has not met the requisites of Rule 24. He has failed to allege any interference by the defendant bus company with his ability to advertise on metro buses. Certainly, he does not claim that the defendant bus company's refusal to display CARASA advertisements has caused him harm. Finally, Mr. Frank has not shown that the parties cannot adequately represent his interests.

For all these reasons, Mr. Frank's "application" is in all respects denied. *See United States Postal Service v. Brennan*, 579 F.2d 188, 191 (2d Cir.1978).

## II.

Before deciding whether injunctive relief should issue, the testimony at trial must be summarized.

NFTA is a public corporation operating the bus company. The bus company is managed by Niagara Frontier Transit Metro System, Inc. [NFTMS]. CARASA describes itself as "an unincorporated group of individuals which advocates a woman's rights to reproductive choice."

In the fall of 1982, CARASA approached NFTMS to publicize its position through advertising space on public buses. They were referred to NFTMS's advertising agent, Winston Network, Inc. [Winston]. An employee of Winston, Sandy Vas, explained that based on the content of the proposed advertisement, CARASA would be charged at the public service rate. It was understood between the CARASA representative, Jo Marie Privitera, and Ms. Vas that because of the public service nature of the ad, it would be placed on the interior of the bus. No discussion or suggestion took place with respect to exterior bus advertising. Ms. Vas told the CARASA representative that she envisioned no problem with the ad copy,[1] that similar ads had been placed on the interior of public buses.

In February of 1983, Ms. Privitera called Ms. Vas to confirm that grant monies had become available for the ad campaign. Public service rates were confirmed at that time. Ms. Privitera was instructed to bring the printed bus cards to the office and then sign a contract with Winston.

However, on April 1, 1983 (the same day the bus card order was to be sent to the printer), Ms. Vas called Ms. Privitera to warn that the content of the CARASA ad

---

1. The following is a copy of the proposed advertisement submitted to Winston for display on the public buses.

may be "offensive," that both Mr. Langdon, Winston's marketing manager, and NFTMS must first approve the content. She further cautioned that space constraints would undoubtably shorten the ad run. On April 14, 1983, Mr. Langdon called Ms. Privitera to say that NFTMS had refused the CARASA ad because of its controversial content.

While testifying, Mr. Langdon admitted that NFTMS has never provided Winston with any guidelines on ad content and that space in bus interiors had not been a problem in the six months preceding the rejec-

# Can you tell which of us had an abortion?

"I'm 27. I'm 30. I'm 21 and a single mother. I can't afford a child. I want one later. I have to work."
The reasons are endless.

Make sure the decision is yours!

## Abortion will be against the law unless you do something now!

## All of us.

CALL 885 1375 FOR MORE INFORMATION

FUNDED BY A GRANT FROM the M.S. FOUNDATION for Women, Inc.

### Coalition for Abortion Rights and Against Sterilization Abuse

© CARASA 1981

**CARASA/BUFFALO • P.O. BOX 404 • BUFFALO, NEW YORK • 14205**

EXHIBIT 1

tion of the CARASA ad. He further explained that NFTMS had never before contacted him at Winston about any ads. Only twice had he sought guidance from NFTMS on ad content. Both times, NFTMS had approved the ad. It is clear from the testimony of both Mr. Langdon and Ms. Irene Engler of NFTMS that a Buffalo News article describing the CARASA ad campaign had sparked the NFTMS response.

Ms. Engler was in charge of public relations and marketing at NFTMS. She and Executive Vice President J.M. Heinman were responsible for rejecting the CARASA ad. They consulted with NFTMS's parent company, Niagara Frontier Transit Authority [NFTA], for concurrence. Ms. Engler described that the decision took into account information included in the News article and was the result of "good judgment, subjective I admit." She admitted that not all ads are similarly screened but that in most cases, NFTMS relies upon Winston.

The Vice President for Finance of NFTMS, Mr. J.M. Heinen, testified that no written policy exists with respect to ad content. However, he insisted that a "verbal policy" has been handed down through company officials. He defined that policy as rejecting ads of "the type that we wouldn't want our passengers exposed to." He elaborated by explaining that the "policy" was "just a common sense approach of

how controversial or emotionally charged an issue is "—basically, "a unilateral decision." When asked, Mr. Heinen defined controversial as something "highly debated pro or con, like the death penalty."

Mr. Heinen explained that Ms. Engler makes the initial decision on ads but that she may consult with bus company officials. When presented with a series of hypothetical ads, Mr. Heinen responded that his decision to accept or reject the ads was based on his personal reaction. He stated that the bus company had never before rejected a bus interior or public service ad based on "controversial" content.

Although Mr. Heinen explained that all public service ads were placed on bus interiors, he recollected that a "Pray the Rosary" ad had been placed as a bus exterior ad.

Mr. Langdon noted that Planned Parenthood had advertised earlier in the year and that Winston had not checked the ad copy until after the contract was signed. NFTMS was not notified about the ad before it was placed. Planned Parenthood was given public service rates for an ad which included "advocacy for reproductive rights."[2]

Ms. Engler attempted to explain a difference between the Planned Parenthood ad and the CARASA ad. She viewed the CARASA ad as "political," while the Planned Parenthood ad was "strictly giving advice

**2.** The following is a copy of the Planned Parenthood ad which was displayed on NFTA bus interiors.

# PLANNED PARENTHOOD OF BUFFALO

### Medical Services
* Complete gynecological examinations for women of all ages
* Birth control information and methods
* Pregnancy testing, counseling, referral
* Infertility counseling and referral

### Public Affairs
* Advocacy for reproductive rights
* Promotion of community awareness

### Educational Services
* Parent training programs
* Special presentations for groups and individuals

### Resource Center
* Complete reference and research facility
* Audiovisual materials
* Curricula and other teaching aids

## 1933-1983  CALL PLANNED PARENTHOOD at 853-1771

of a service." She said it was the bus company policy to keep any kind of controversial or political ad out of the interior of the buses. She explained that her personal judgment determined the question of whether the ad was controversial and that her call to Mr. Langdon had been a complete departure from prior experience. Never before had she initiated an objection to Winston regarding ad content on the buses.

From the evidence presented, it is clear that the CARASA ad was the *only* ad rejected for content in the memory of those testifying. It is also clear that other similar or in part identical ads had been placed on public buses over the years. Finally, the testimony of the NFTMS officials and Winston employees displayed a complete absence of any explicit and consistent policy for the display of advertisements on public buses.

Advertisements about the draft, religion, abortion, or political campaigns have appeared in the past on public buses. Some of these ads appeared to meet the definition of controversial material as defined by bus company and ad agency personnel.

### III.

█ Plaintiff has properly articulated first and fourteenth amendment concerns. There is no argument between the parties that the requisite state action permits this constitutional complaint. There is no dispute that the ad may be categorized as noncommercial speech. NFTMS may not create a forum for noncommercial speech and then arbitrarily or capriciously deny plaintiff access to that forum.

Public buses are not *per se* a public forum. *Lehman v. City of Shaker Heights*, 418 U.S. 298, 303, 94 S.Ct. 2714, 2717, 41 L.Ed.2d 770 (1974). However, in this case, NFTMS has created a public forum by permitting other forms of constitutionally protected speech. *Perry Education Ass'n v. Perry Local Educators' Assn*, 460 U.S. 37, 46, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983). As noted, NFTMS has not only displayed political party advertis-

ing, but also "public service" ads which, over the years, have included differing views on women's reproductive choices.

Once this practice has been established, NFTMS may not "favor certain kinds of messages ... over others." *Metromedia, Inc. v. San Diego*, 453 U.S. 490, 519, 101 S.Ct. 2882, 2898, 69 L.Ed.2d 800 (1980); *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). Ms. Engler from NFTMS described the bus company policy as "conservative" and "straight-laced." She personally rejected the CARASA ad on behalf of NFTMS; yet, other similar ads never reached her review and were carried on the City buses. Each and every person testifying for the defendant explained an objection to the CARASA ad on the basis of "controversial" or "objectionable" content. Rejection of the ad was made in the absence of any set policy to determine the propriety of commercial or noncommercial ad content.

In light of these facts, it is clear that defendants have violated CARASA's first and fourteenth amendment rights. *Gay Activists Alliance of Washington, D.C., Inc. v. Washington Metropolitan Transit Authority*, No. 78-2217, *slip op.* (D.C.D.C. July 5, 1979) (advertisement for gay rights could not be banned); *Preterm Inc. v. Mass. Bay Transportation Authority*, No. 74-159M, *slip op.* (D.Mass. May 13, 1974) (advertisement for abortion clinic could not be banned); *Kissinger v. New York City Transit Authority*, 274 F.Supp. 438 (S.D. N.Y.1967) (antiwar subway ad could not be banned).

█ Where constitutionally protected speech is thwarted, irreparable injury results. *Elrod v. Burns*, 427 U.S. 347, 373–74, 96 S.Ct. 2673, 2689–2690, 49 L.Ed.2d 547 (1976). In view of both the consolidated posture of this case and this court's position on the merits, plaintiff deserves permanent injunctive relief. NFTMS is enjoined from prohibiting this CARASA advertisement on their buses. Defendants' motion to dismiss is denied.

990

The parties are instructed to make submissions on the issue of monetary damages on or before February 27, 1984.

So ordered.