### AIDS ACTION COMMITTEE OF MASSACHUSETTS, INC.

v.

### MASSACHUSETTS BAY TRANSPORTATION AUTHORITY and Park Transit Displays, Inc.

Civ. A. No. 93–12561–Z.

United States District Court, D. Massachusetts.

Dec. 29, 1993.

Judgment Issued Jan. 25, 1994.

H. Reed Witherby, Smith, Duggan & Johnson, Sarah Wunsch, Mass. Civ. Liberties Union Foundation, Robert Greenwald, Boston, MA, for Aids Action Committee of Massachusetts, Inc., plaintiff.

James G. Reardon, Reardon & Reardon, Worcester, MA, Carol A. Buckley, Asst. General Counsel, Boston, MA, for Massachusetts Bay Transp. Authority.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

Plaintiff, Aids Action Committee of Massachusetts, Inc. ("AAC"), sought to run in subway and trolley cars a series of public service advertisements promoting the use of condoms to prevent the spread of the AIDS virus. The Massachusetts Bay Transportation Authority ("MBTA") and its advertising agent, Park Transit Displays, Inc. ("PTD"), refused to post the ads for various and, over time, variable reasons. Plaintiff ultimately brought this action under 42 U.S.C. § 1983 (1993) for declaratory and injunctive relief, alleging violations of the First and Fourteenth Amendments.[1] It moved for a preliminary injunction, but at the hearing thereon all parties stipulated that the Court could decide the matter on the merits based on the existing record.[2]

### Factual Background

The MBTA is a political subdivision of the Commonwealth of Massachusetts that is explicitly authorized to "sell, lease or otherwise contract for advertising in or on the facilities of the authority." Mass.Gen.L. ch. 161A, §§ 2, 3 (1993). Through its agent PTD, the MBTA regularly authorizes the posting of commercial and public service notices in the display spaces above transit car windows and bracketing car doors. Recent public service posters have discussed AIDS awareness, abortion and family planning, poverty, animal rights, and drug abuse.

In September 1993, AAC submitted to PTD six mock-ups of advertisements, attached to the verified complaint and identified here as (a)–(f), which are variations on a single theme: the upper half shows a colored condom, and the bottom half consists of a clever headline followed by several smaller-type sentences urging condom use to prevent the spread of the AIDS virus. The MBTA's objections concern the wording of the messages, not the depiction of condoms.[3]

1. The First Amendment applies to the states through the Fourteenth Amendment. *Mills v. Alabama*, 384 U.S. 214, 218, 86 S.Ct. 1434, 1436, 16 L.Ed.2d 484 (1966).

2. The record consists of the verified complaint and affidavits filed by both parties that include copies of the advertisements in issue as well as the MBTA's written policy concerning advertising.

3. The advertisements, in which the bold sentence is printed substantially larger than the remaining text, read as follows:

(a) **Haven't you got enough to worry about in bed?** Use a latex condom. It might not take your mind off everything else during sex, but at least you'll have one less thing to worry about. AIDS. For more information about HIV and AIDS, call the AIDS Action Committee Hotline at 1–800–235–2331.

(b) **Even if you don't have one, carry one.** A latex condom is the best way to prevent AIDS. So make sure you've got one when it's time to put one on him. For more information about HIV and AIDS, call the AIDS Action Committee Hotline at 1–800–235–2331.

(c) **Simply having one on hand won't do any good.** For a latex condom to be effective against AIDS, you've got to put it on the correct appendage. Use a condom. Barring abstinence, it's the best way to prevent AIDS. For more information about HIV and AIDS, call the AIDS Action Committee Hotline at 1–800–235–2331.

(d) **You've got to be putting me on.** You mean you're not using a latex condom every time? You can't be serious. Barring abstinence, it's the best way to prevent AIDS. For more infor-

The MBTA and PTD reached four different and contradictory verdicts on the acceptability of the advertisements. Initially, PTD accepted (a)–(d) and rejected (e) and (f). Two days later, it told AAC that editorial changes, which diluted or eliminated sexual innuendo, were necessary for (a), specifically, deleting "in bed," and (c), specifically, deleting "the correct appendage." The first week in October, when the advertisements originally were to run, the MBTA added its copy-editing expertise to PTD's and said that (b) needed to omit "him" and the headline of (d) needed to be rewritten to "You've got to be kidding." PTD and the MBTA flirted with the previously rejected (e) and (f) at this time, stating that, with substantial editorial changes, they could run. In the fourth and final round, AAC was told that (c) would be accepted with and (d) without edits. The other four advertisements were rejected. When AAC ran comparable advertisements on the MBTA in 1992, it endured similar caprice.

The MBTA has published a "Commercial and Public Service Advertising Policy" ("the Policy"). According to AAC, the Policy was adopted in February 1993 but it apparently did not guide the MBTA's decisions during AAC's recent advertisement campaign. One of the stated missions of the MBTA is to enable not-for-profit organizations to "deliver [public service] messages that are neither controversial nor offensive to our riders." The articulated standard is good taste, decency, and compliance with community standards.

The parties agree that the MBTA is a state actor. Because PTD assisted the MBTA in denying ad space to AAC's advertisements, AAC may bring this constitutional claim against both. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970).

*Public Forum*

Two types of public fora exist. Those places which "immemorially [have] been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions" are traditional public fora. *Hague v. CIO*, 307 U.S. 496, 515, 59 S.Ct. 954, 964, 83 L.Ed. 1423 (1939); *Cornelius v. NAACP Legal Defense & Educ. Fund*, 473 U.S. 788, 803, 105 S.Ct. 3439, 3449, 87 L.Ed.2d 567 (1985). AAC does not claim that MBTA transit cars are traditional public fora.

■ A state can designate public fora by intentionally opening for public discourse places not traditionally used for expressive activity. *Cornelius*, 473 U.S. at 803, 105 S.Ct. at 3449; *Community for Creative Non-Violence v. Turner*, 893 F.2d 1387, 1391 (D.C.Cir.1990) (various spaces on transit system designated public fora); *Planned Parenthood Ass'n/Chicago Area v. Chicago Transit Auth.*, 767 F.2d 1225, 1232 (7th Cir. 1985) (same). Although the state is not required to permit public discourse in nontraditional fora, once it does, and for as long as it does, it must permit speech to the same extent as in a traditional public forum. *Board of Airport Comm'rs of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 573, 107 S.Ct. 2568, 2571, 96 L.Ed.2d 500 (1987); *Perry Educ. Ass'n v. Perry Educators' Ass'n*, 460 U.S. 37, 47, 103 S.Ct. 948, 956, 74 L.Ed.2d 794 (1983).

■ Two factors inform a court's determination that a state has designated a public forum: government intent to permit public discourse in a nontraditional forum, and the compatibility of the forum with expressive activity. *Cornelius*, 473 U.S. at 803, 105 S.Ct. at 3449; *Widmar v. Vincent*, 454 U.S.

---

mation about HIV and AIDS, call the AIDS Action Committee Hotline at 1–800–235–2331. (e) **Tell him you don't know how it will ever fit.** Nothing will give him a swelled head faster than flattery. So compliment him on his good taste in using a latex condom. Barring abstinence, it's the best way to prevent AIDS. For more information about HIV and AIDS, call the AIDS Action Committee Hotline at 1–800–235–2331.

(f) **One of these will make you 1/1000th of an inch larger.** Of course, everyone says size doesn't matter. But a thin layer of latex could make all the difference in the world. Use a condom. Barring abstinence, it's the best way to prevent AIDS. For more information about HIV and AIDS, call the AIDS Action Committee Hotline at 1–800–235–2331.

263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981) (state university policy of making available to student groups school facilities created public forum); *Lebron v. Washington Metro. Area Transit Auth.*, 749 F.2d 893, 896 (D.C.Cir. 1984) (subway stations became public fora through transit system's acceptance of political advertising).

■ The evidence in this case shows that the Commonwealth of Massachusetts intended to permit public discourse throughout its transit system. The MBTA is authorized by statute to lease advertising space, and, in fact, does regularly lease advertising space inside and outside subways and buses and in transit stations. Mass.Gen.L. ch. 161A, § 3. The MBTA does not dispute this. According to its brief, "the MBTA has posted countless advertisements over the years on a wide variety of topics." *See Lebron*, 749 F.2d at 896. Further evidence of defendants' intent is the hiring of PTD to promote MBTA facilities as advertising venues for commercial and noncommercial speech. *See Penthouse Int'l Ltd. v. Koch*, 599 F.Supp. 1338, 1346–47 (S.D.N.Y.1984) (subway a public forum when advertising public regularly solicited by city's agent). Finally, the MBTA has published a Policy that governs use of its advertising space. Through these actions, the MBTA designated the available advertising space a public forum.[4]

Furthermore, MBTA facilities are wholly compatible with expressive activity. Posting signs above windows and near doors in no way interferes with the MBTA's day-to-day operations of moving its passengers around town. *See Jews for Jesus*, 482 U.S. at 574, 107 S.Ct. at 2572 (regulation on speech at airport impermissibly barred speech which

did not disrupt airport activities). In fact, advertising enhances this endeavor by reducing the MBTA's admitted deficit and distracting and perhaps educating weary passengers during long rides and unwelcome delays. The MBTA cites no case in which a court concludes that public service advertising interferes with the functioning of a transit system.[5]

### Restricting Speech in Public Fora

■ The First Amendment permits only two types of restrictions on speech in traditional and designated public fora. *Perry*, 460 U.S. at 47, 103 S.Ct. at 956. The state may impose a content-neutral time, place and manner restriction narrowly tailored to serve a significant state interest, which leaves open alternative communicative means. *Id.* at 46, 103 S.Ct. at 955; *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661 (1989). Or, the state may impose a content-based restriction that is necessary to promote a compelling state interest. *Perry*, 460 U.S. at 46, 103 S.Ct. at 955. Because MBTA transit cars are designated public fora, the MBTA may only limit expressive activity thereon in one of these ways.[6]

### Time, Place, Manner

■ A time, place and manner restriction will be upheld only if three conditions are met: content-neutrality, narrow tailoring to a significant government interest, and ample alternative communicative means. Content neutrality exists when the regulation serves purposes unrelated to the content of the message, that is, when it is "justified without reference to the content of the regulated

4. The MBTA mistakenly relies on *Lehman v. Shaker Heights*, 418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974). In *Shaker Heights*, the city had never permitted political advertising on its buses. 418 U.S. at 299–300, 94 S.Ct. at 2715. Thus, the court properly concluded that the city had not created a public forum for political advertising. *Id.* at 305, 94 S.Ct. at 2718. *Shaker Heights* merely stands for the proposition that the interior of transit cars are not traditional public fora. *See Planned Parenthood*, 767 F.2d at 1233.

5. Public discourse on a transit system, particularly of the postering sort, poses none of the

concerns supporting its limitation in other contexts, such as prisons and schools. *See Perry*, 460 U.S. at 46, 103 S.Ct. at 955 (internal school mail system); *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977) (prisons). In those contexts, unlimited expression can threaten the very function of the forum.

6. The record does not make clear whether the MBTA rejected AAC's advertisements based on its policy or its discretion. To the extent that the distinction affects the analysis, it is so stated.

speech." *Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984); *Ward*, 491 U.S. at 791, 109 S.Ct. at 2753–54.

█ The MBTA Policy bars from display public service advertisements that contain "messages or graphic representations pertaining to sexual conduct." The MBTA rejected AAC's advertisements to prevent the viewing of "indecent sexual images" which are "patently offensive, vulgar, [and] lewd." It claims the authority to deny advertising space because it "knows that an advertisement is egregiously offensive or indecent when it sees it."

When the MBTA designated the subways public fora, however, it lost the ability to discriminate by subject matter. *See Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 100, 92 S.Ct. 2286, 2292, 33 L.Ed.2d 212 (1972); *Student Government Ass'n v. Board of Trustees*, 868 F.2d 473, 480 (1st Cir.1989). The MBTA cannot open its transit car doors to public service advertising and hang only its favorite posters. Because both the Policy and the MBTA's actions fail the test of content-neutrality, no further discussion of time, place and manner restrictions is necessary.

*Compelling State Interest*

█ The MBTA may also discriminate on the basis of the content of public service advertisements with a regulation narrowly tailored to serve a compelling state interest. *Perry*, 460 U.S. at 45, 103 S.Ct. at 954–55; *Action for Children's Television v. FCC*, 11 F.3d 170, 174, 176 (D.C.Cir.1993). As compelling interests the MBTA offers the "captive audience of MBTA passengers" and the "protection" and "well-being" of children. However, because it concedes in its brief that no captive audience problem arises when a forum is designated public, only the latter concern is relevant. *See Penthouse*, 599 F.Supp. at 1349 (captive audience concern factually inapplicable when transit cars designated public fora). That concern evaporates on examination because shielding children from AAC's advertisements is insuffi-

ciently compelling to justify the resulting limitation of speech.

The MBTA cites no case in which a court found the possibility of harm to children sufficient to outweigh advertisers' rights in a public forum. In contrast, AAC cites numerous cases which do not allow child viewers to cast a shadow on speakers' rights in a public forum. *See Community for Creative Non–Violence v. Turner*, 893 F.2d 1387 (D.C.Cir. 1990); *Planned Parenthood Ass'n*, 767 F.2d at 1232–33; *Coalition for Abortion Rights & Against Sterilization Abuse v. Niagara Frontier Transp. Auth.*, 584 F.Supp. 985, 989 (W.D.N.Y.1984).[7]

█ Moreover, minors too are entitled to "'a significant measure of First Amendment protection.'" *Action for Children's Television*, 11 F.3d at 180 (quoting *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 212, 95 S.Ct. 2268, 2274, 45 L.Ed.2d 125 (1975)). At a certain point, their interests in receiving information trump the government's interest in insulating them from that same information. *Action for Children's Television*, 11 F.3d at 178–79. Indeed, minors have a substantial interest in receiving the information proffered by the AAC posters. At a minimum, the posters provide the telephone number of a toll-free AIDS hotline, an invaluable source of information for those with no outlet for their AIDS-related concerns. Moreover, with witty headlines crafted to pique the interest of even the most diffident adolescent, the advertisements likely will do more than just invite conversation.

██ Because the MBTA has failed to articulate a compelling state interest, no discussion of narrow tailoring is necessary in considering its Policy. Although the AAC posters undoubtedly will offend some MBTA passengers, this fact alone does not justify their suppression. *See Bolger v. Young Drug Prods. Corp.*, 463 U.S. 60, 72, 103 S.Ct. 2875, 2883, 77 L.Ed.2d 469 (1983) (citing *Carey v. Population Servs. Int'l*, 431 U.S. 678, 701, 97 S.Ct. 2010, 2024, 52 L.Ed.2d 675

---

7. Once again, the MBTA's reliance on *Shaker Heights* is misplaced. In *Shaker Heights*, as noted earlier, the captive audience problem was discussed in the context of a non-public forum.

*Shaker Heights*, 418 U.S. at 305, 94 S.Ct. at 2718. The MBTA concedes that different rules apply in public forum cases.

(1977)). Should the MBTA rewrite its Policy, the First Amendment requires that it be clearly articulated, minimally vague so as to curtail abuse, and consistently applied. *Lebron v. National R.R. Passenger Corp.*, 811 F.Supp. 993, 1001 (S.D.N.Y.1993) (citing *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 757–764, 108 S.Ct. 2138, 2144–48, 100 L.Ed.2d 771 (1988)).

## Conclusion

For the reasons set forth, judgment may be entered permanently enjoining the MBTA and PTD from:

(a) failing or refusing to accept and place on MBTA subway cars and platforms AAC's paid public service advertisements identified above as (a)–(f);

(b) using the MBTA "Commercial and Public Service Advertising Policy," attached to the verified complaint as Exhibit F.

## JUDGMENT

This matter having come before the Court on the motion for preliminary injunction of plaintiff AIDS Action Committee of Massachusetts, Inc. ("AIDS Action Committee"), and plaintiff and defendant Massachusetts Bay Transportation Authority ("MBTA")[1] having agreed to combine the hearing on preliminary injunction with a trial on the merits pursuant to Fed.R.Civ.P. 65(a)(2), after a hearing on the basis of sworn submissions and memoranda and in accordance with the Memorandum of Decision, dated December 29, 1993, it is DECLARED, ORDERED, ADJUDGED AND DECREED, that

1. By refusing to display the AIDS Action Committee's paid public service advertisements, attached to the Verified Complaint as Exhibits "A" and "E," in the advertising spaces on MBTA subway cars and platforms, the MBTA has deprived the AIDS Action Committee of its rights under the First and Fourteenth Amendments to the United States Constitution.

2. The MBTA's use of its "Commercial and Public Service Advertising Policy," attached to the Verified Complaint as Exhibit "F," violates the First and Fourteenth Amendments to the United States Constitution.

3. The MBTA's failure or refusal to accept and display in public advertising space on MBTA subway cars and platforms any advertisements that the AIDS Action Committee may submit for such display, based upon the content of lawful messages contained therein, violates the First and Fourteenth Amendments to the United States Constitution.

4. The MBTA, and all persons in active concert or participation with it, are hereby permanently enjoined from refusing to accept and display in public advertising space on its subway cars and platforms plaintiff's public service advertisements which are attached to the Verified Complaint as Exhibits "A" and "E."

5. The MBTA, and all persons in active concert or participation with it, are hereby permanently enjoined from using the MBTA's "Commercial and Public Service Advertising Policy," attached to the Verified Complaint as Exhibit "F," as a basis for rejecting non-obscene and non-defamatory public service advertisements on the basis of their content.

6. The AIDS Action Committee is entitled to its costs and to an award of attorneys' fees, pursuant to 42 U.S.C. § 1988, in an amount to be determined by agreement of the parties or, failing that, by the Court upon application by the AIDS Action Committee.

---

1. The other defendant, Public Transit Displays, Inc. ("PTD") was served but failed to appear in the action. The plaintiff and the MBTA agreed that PTD was a nominal party. The terms of this judgment extend to PTD as the MBTA's advertising agent.