Garsh, J.
The plaintiff, Beverly Bennett (“Bennett”) commenced this action against the defendant, Massachusetts Bay Transportation Authority (“MBTA”), alleging violations of 42 U.S.C. §1981, 42 U.S.C. §1983, breach of contract between the MBTA and the Urban Mass Transit Administration (“UMTA”),[1] breach of the Collective Bargaining Agreement (“CBA”) between the Boston Carmen’s Union, Division 589 (“Union”) and the MBTA, breach of contract between Bennett and the MBTA, defamation, violation of G.L.c. 12, §§11H and 111, and violation of G.L.c. 214, §lB.[2]TheMBTA has filed a motion in limine seeking dismissal of a number of Bennett’s claims for relief.[3] For the reasons set forth below, the MBTA’s motion in limine to dismiss claims for relief is ALLOWED in part and DENIED in part.
BACKGROUND
Bennett is a female African-American. The MBTA hired Bennett in August of 1984 as a part-time guard on the subway system. In December of 1986, she was promoted to the position of motorperson. At all relevant times, Bennett was member of the Union, and there existed a CBA between the Union and the MBTA. The CBA sets forth the rights and responsibilities of Bennett, the Union, and the MBTA with respect to workplace grievances.
In December of 1989, the MBTA established its first written drug and alcohol policy (“Policy”). In March of 1991, the MBTA implemented the random drug testing component of the Policy. On June 4, 1992, pursuant to the Policy, the MBTA selected Bennett for a random *155 drug screen. Bennett’s urine tested positive for cocaine, and, on June 19, 1992, the MBTA suspended Bennett for seven days pending discharge. By letter dated July 16, 1992, the MBTA notified Bennett that she was terminated from employment.
DISCUSSION
42 U.S.C. §1981[4]
In the Certificate Relative to Claims Presented, Bennett clarifies that her Section 1981 claim is predicated upon racially motivated termination and racially motivated refusal to rehire. That claim may be characterized as one alleging disparate treatment.
The MBTA seeks dismissal of the Section 1981 claim because Bennett had also alleged that the random testing procedure has had a significant disparate impact on African-American employees. Bennett does not dispute that a Section 1981 claim grounded on a disparate impact theory may not survive; that statute can be violated only by intentional discrimination. General Building Contractors Ass’n v. Pennsylvania, 458 U.S. 375, 389 (1982) (section 1981 doesnotreach practices that merely result in a disproportionate impact on a particular class); Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996) (“In order to prevail under Section 1981, a plaintiff must prove purposeful employment discrimination . . .”).
Bennett’s Section 1981 claim survives total dismissal since she seeks to ground liability on acts of disparate treatment; to prove such acts, Bennett will be required to demonstrate discriminatory intent. General Building, 458 U.S. at 391.
42 U.S.C. §1983[5]
Bennett alleges five independent theories of recovery under 42 U.S.C. §1983.[6] That statute provides redress against “[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . .” subjects another to deprivation of constitutional rights. 42 U.S.C. §1983.
State Action
Although in an unrelated Section 1983 action, the MBTA agreed that it is a state actor, AIDS Action Committee of Massachusetts, Inc. v. Massachusetts Bay Transportation Authority, 849 F.Supp. 79, 82 (D.Mass. 1993), here it moves to dismiss Bennett’s Section 1983 claim on the grounds that the plaintiff cannot prove state action and, therefore, the MBTA cannot be liable under 42 U.S.C. §1983.[7]
Whether a defendant constitutes a “person acting under color of state law” is a question of federal law.[8] Howlett v. Rose, 496 U.S. 356, 375-76 (1990). In order to be subject to suit under 42 U.S.C. §1983, a defendant must be both a “person” and have acted under color of state law.
The MBTA does not argue that it is not a “person” for purposes of Section 1983. The HTA is a “body politic and corporate,” which has the authority, inter alia, to sue and be sued. G.L.c. 161A, §2. Itis expressly excluded from the protection of sovereign or governmental immunity accorded under the Massachusetts Tort Claims Act. G.L.c. 258, §1. An entity with Eleventh Amendment immunity is not a “person” within the meaning of Section 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989).
It does not follow that, because the MBTA does not enjoy sovereign immunity, Morrison-Knudsen Co. v. Massachusetts Bay Transportation Authority, 573 F.Supp. 698, 703 (D.Idaho 1983) (MBTA lacks Eleventh Amendment immunity), it must also not be a state actor within the meaning of 42 U.S.C. §1983. Cf. Lebron v. National Railroad Passenger Corp., 513 U.S. 374, 396 (1995) (if a corporation is, “by its very nature, what the Constitution regards as the Government,” a statutory pronouncement that it is not such cannot relieve it of constitutional restrictions). The MBTA is entitled to dismissal of plaintiffs Section 1983 claim only if the acts alleged to have been committed by the MBTA were not under color of state law. In Lugar v. Edmonson Oil Co., 457 U.S. 922, 935 n.18 (1982), the Supreme Court held that “conduct satisfying the state action requirement of the Fourteenth Amendment satisfies the statutory requirement of action under color of state law . . .” The question that must be answered is whether the alleged infringement of Bennett’s constitutional rights is fairly attributable to the Commonwealth. Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982). It is.
An authority is a state actor when the government creates and controls it even if the authority, like the MBTA, can sue and be sued. Cf. Heffez v. Washington Metropolitan Area Transit Authority, 569 F.Supp. 1551 (D.D.C. 1983) (transit authority which can, inter alia, sue and be sued, adopt and use a corporate seal, construct, own, operate, and sell real and personal property, and enter into and perform contracts lacks Eleventh Amendment immunity and is a state actor for purposes of 42 U.S.C. §1983).[9] In Lebron v. National Railroad Passenger Corp., 513 U.S. at 400, the Supreme Court held that where a government creates a corporation by special law for the purpose of furthering governmental objectives and retains for itself authority to appoint a majority of that corporation’s directors, the corporation is part of the government for purposes of the Constitution. The corporation at issue in that case was Amtrak; the Court found Amtrak to be part of the federal government for purposes of the First Amendment despite the fact that the statute creating it disavowed Amtrak’s agency status and deprived it of sovereign immunity from suit. The logic of Lebrón applies to the analysis that must be performed under Section 1983 to determine if direct state action is present. Barrios-Velazquez v. Asociacion De Empleados Del Estado Libre Asociado de Puerto Rico, 84 F.3d 487, 492 (1st Cir. 1996) (application oí Lebrón principles leads to conclusion that there is no direct *156 state action within the meaning of 42 U.S.C. §1983 with respect to an employee association over which the government of Puerto Rico does not retain the power to appoint any of the association’s directors). [10]
The MBTA was created by special law “as a political subdivision of the commonwealth” for the furtherance of vital governmental functions, namely providing mass transportation services to scores of communities in the Commonwealth. G.L.c. 161A, §2.[11] The MBTA is managed by a board of seven directors, six of whom are appointed by the Governor, allowing the state to control the operation of the MBTA through its appointees. G.L.c. 161A, §6. Any director except the chairperson may be removed for cause by the Governor. Id. In an emergency threatening the availability of essential services of transportation, the Governor may take over and operate the MBTA through any department or agency of the Commonwealth or through any person designated by him. G.L.c. 161A, §20. Furthermore, the MBTA is included within the Executive Office of Transportation and Construction. G.L.c. 6A, §19. Its capital investment program and mass transportation plans must be prepared under that department’s “direction, control and supervision . . .” G.L.c. 161A, §5(g).[12]
Application of the principles articulated in Lebrón to the MBTA requires the conclusion that the MBTA is a state actor for purposes of Section 1983.[13]
Title VII Preemption
The MBTA also contends that 42 U.S.C. 2000e et seq. (“Title VII”) preempts the following three bases upon which Bennett’s claim under 42 U.S.C. §1983 is predicated: racially motivated termination, termination arising out of the disparate impact of the Policy, and racially motivated refusal to rehire. Title VII does not, however, preempt a 42 U.S.C. §1983 claim where the data is based on a violation of the United States Constitution. Annis v. County of Westchester, 36 F.3d 251, 254 (2d Cir. 1994) (Section 1983 employment discrimination claim alleging violation of Fourteenth Amendment right to be free from sex discrimination not preempted by Title VII); Notari v. Denver Water Dep’t. 971 F.2d 585, 588 (10th Cir. 1992) (same).
Title VII preempts an action brought under 42 U.S.C. §1983 only where the suit relies on Title VII's provisions as the substantive legal basis for the validity of the Section 1983 claim. Notari, 971 F.2d at 588 (“such is not the case” where plaintiff alleges that employer acted under color of law to violate rights secured by the Fourteenth Amendment’s equal protection and due process clauses). In Irby v. Sullivan, 737 F.2d 1418 (5th Cir. 1984), upon which the MBTA relies, the plaintiff had sought to bring a Title VII retaliatory firing claim under 42 U.S.C. §1983. The court held that Title VII provided the exclusive remedy for violation of the terms of Section 704(a) of Title VII. Irby, 737 F.2d at 1428. The Irby court went to hold, however, that the fact that the plaintiff had cited an incorrect predicate for utilization of his Section 1983 remedy did not require dismissal since the claim also could be based upon racial discrimination in violation of 42 U.S.C. §1981. Id. at 1429-30. See also Brown v. Town of Allenstown, 648 F.Supp. 831, 839 (D.N.H. 1986) (“preemption becomes an issue only when the §1983 action arises out of the violation of Title VII itself; that is, when the §1983 claim is not based on a constitutional or statutory right independent of Title VII”).
Bennett does not invoke any of Title VII’s provisions as grounds for her Section 1983 claim. Accordingly, Title VII is not the exclusive remedy.[14]
Breach of Contract Between the MBTA and UMTA
Bennett brings her claim for breach of contract between the MBTA and UMTA under a third-party beneficiary contract theory. Bennett argues that she was an intended beneficiary of an agreement between UMTA and the MBTA entered into when the MBTA received funds from UMTA, pursuant to which the MBTA obligated itself to adhere to certain federal statutes and regulations.[15]
Bennett predicates her breach of contract claim on two independent alleged breaches. First, Bennett claims that the MBTA breached its agreement with UMTA by failing to promulgate comprehensive drug testing regulations conforming to UMTA’s regulations. Second, Bennett alleges that the MBTA’s discriminatory treatment of her breached that part of the agreement between the MBTA and UMTA in which the MBTA promised not to discriminate against its employees.
Breach of Contract by Nonconforming Drug Policy
Assuming arguendo that Bennett may bring a third-party beneficiary contract action alleging that the MBTA breached an agreement between it and UMTA, and assuming further that, if there were UMTA regulations on drug testing, they would have been incorporated into such an agreement, the MBTA nevertheless is entitled to dismissal of Bennett’s contractual claim based on a purported violation of UMTA’s drug testing regulations. On June 4, 1992, when the MBTA tested Bennett pursuant to its Policy, UMTA’s drug testing regulations had been suspended.
In Amalgamated Transit Union v. Skinner, 894 F.2d 1362, 1372 (D.C. Cir. 1990), UMTA was found not to have authority to impose, through rulemaking, mandatory, uniform, national drug testing upon local transit authorities. The Department of Transportation, shortly thereafter, on January 25, 1990, suspended UMTA’s drug testing regulation by a Final Rule. Burka v. New York City Transit Authority, 751 F.Supp. 441, 444 (S.D.N.Y. 1990). The UMTA regulations remained suspended for the rest of 1990 and throughout 1991 and 1992. No new regulations governing the MBTA *157 had been promulgated prior to Bennett’s having been tested in 1992. Therefore, Bennett’s contract claim alleging that the MBTA violated UMTA’s drug testing regulations incorporated in an agreement between MBTA and UMTA fails because she can point to no UMTA regulations pertaining to drug testing that were in force when she was tested or even when the random drug testing of safety-sensitive employees was first implemented by the MBTA.
Breach of Contract by Discrimination
Bennett’s alternative third-party beneficiary contract claim alleges that the MBTA breached a nondiscrimination requirement incorporated into an agreement with UMTA. Specifically, Bennett argues that the MBTA violated 49 U.S.C. App. §1615, a statute prohibiting discrimination by UMTA funding recipients, the requirements of which, Bennett alleges, are contained in an agreement between the MBTA and UMTA. That statute, provides, in relevant part, as follows:
No person . . . shall on the grounds of race ... be subject to discrimination under any project, program, or activity funded in whole or in part through financial assistance under this [Act].
49 U.S.C. App. §1615(a)(l).
The MBTA contends that Bennett cannot proceed under 49 U.S.C. App. §1615 because that statute does not create a private right of action. Indeed, Section 1615 specifically confers the right to enforce the statute on the Secretary of Transportation, allowing the Secretary to direct that no further federal assistance be provided to the offender or to refer the matter to the United States Attorney General, among other alternatives. 49 U.S.C. App. §1615(a)(3). Bennett does not claim to have an implied right of action under Section 1615. Instead, the plaintiff alleges that the MBTA breached an agreement which incorporated the nondiscrimination provisions contained in Section 1615.
Whether Bennett may maintain a third-party beneficiary contract claim based on a purported agreement between the MBTA and UMTA cannot be addressed in the abstract. Resolution of this issue requires interpretation of the provisions of the agreement itself, if any. Owens v. Haas, 601 F.2d 1242, 1248 (2d Cir.) (trial court required contract in order to determine validity of third-party beneficiary contract claim and appellate court’s “reading of the contract” resulted in remand), cert. denied sub nom. County of Nassau v. Owens, 444 U.S. 980 (1979). The agreement is not contained in this record. Indeed, in its answer, the MBTA denies the existence of an agreement. Whether Bennett might be able to enforce nondiscrimination provisions in a contract between the MBTA and UMTA cannot be resolved in the context of a motion in limine to dismiss claims for relief. At this stage, the MBTA is not entitled to dismissal of Bennett’s third-party beneficiary claim alleging breach of nondiscrimination provisions contained in an agreement between UMTA and the MBTA.[16]
Breach of Collective Bargaining Agreement
Bennett argues that the MBTA breached the CBA between the MBTA and the Union in connection with her termination.[17] The issue posed by this claim is whether the Union’s decision not to arbitrate Bennett’s grievance precludes Bennett from bringing the present contract claim.
As is alleged by Bennett, at all relevant times, there was in existence a collective bargaining agreement between the Union and the MBTA which governed and made provision for the terms and conditions of employment, including procedures with regard to the imposition of discipline, suspension, and termination. An aggrieved employee, regardless of the merits of her claim, may not secure arbitration of a grievance that the union has decided not to arbitrate in the absence of substantial evidence that the union’s decision is arbitrary, discriminatory, or actuated by bad faith such that the union has breached its duty of fair representation. Baker v. Local 2977, 25 Mass.App.Ct. 439, 441 (1988). See also Norton v. Massachusetts Bay Transportation Authority, 369 Mass. 1 (1975). Similarly, a plaintiff “does not have an independent common law claim that would permit him to bring an action 'without invoking the grievance and arbitration procedures.” Azzi v. Western Electric Co., 19 Mass.App.Ct. 406, 410 (1985).
On the circumstances of this case, the Union’s decision not to arbitrate Bennett’s grievance forecloses plaintiffs contract claim against the defendant for violation of the CBA. On July 15, 1991, Bennett received a one-day administrative suspension for absenteeism. On September 26, 1991, Bennett received a three-day administrative suspension for further absenteeism. On January 9, 1992, Bennett received a five-day administrative suspension for absenteeism and was placed on a final warning status. Bennett failed to submit grievances for any of these disciplinary actions against her.[18] On June 4, 192, Bennett was selected, while on duty as a motorperson, for a random drug screening. She tested positive for cocaine use. By letter dated July 16, 1992, the MBTA discharged Bennett for violation of MBTA rules, violation of the MBTA’s Policy, and her prior record. Bennett filed a grievance which was presented to and denied by the MBTA’s Superintendent of Rail Lines, its Chief Transportation Officer, and its Director of Labor Relations. The Union appealed Bennett’s grievance to the MBTA’s General Manager, who notified the Union of his denial of Bennett’s grievance.
Step five of the CBA’s grievance procedure provides that “whenever the grievance procedure . . . fails to resolve the issues in dispute, the grievance shall be submitted to final and binding arbitration . . . upon the written request of the union ...” The Union’s Executive Board voted not to recommend arbitration *158 of Bennett’s grievance. On December 4, 1992, the Union mailed a notice of the Executive Board’s vote to Bennett. That noticed advised Bennett that she “may appeal the decision of the Executive Board in accordance with Section 10 of the local union by-laws.”[19] Despite the notification, Bennett failed to appeal the Union’s decision not to arbitrate. Instead, a year later, on November 2, 1993, Bennett’s counsel wrote to the Union regarding the arbitration award of a white MBTA employee who had been discharged by the MBTA for testing positive for cocaine use and whose discharge had been submitted by the Union to arbitration. “Before bringing an action against [an] employer for a violation of a collective bargaining agreement, the employee is required to exhaust the grievance procedures." Azzi v. Western Electric Co., 19 Mass.App.Ct. at 408. See also Johnston v. School Committee of Watertown, 404 Mass. 23, 25 (1989).
Bennett may not rely on the exception to the exhaustion requirement that exists where a union has failed in its duty to fairly represent the employee in grievance proceedings. Azzi, 19 Mass.App.Ct. at 409. In this very action, the court (Doerfer, J.) found no evidence that the Union’s failure to arbitrate Bennett’s discharge was discriminatory, and summary judgment was entered in favor of the co-defendant Union, dismissing Bennett’s claim that the Union did not fairly represent her in connection with her termination. “Since the plaintiff has failed in [her] claim that the union was in breach of its duty of fair representation, [her] action against the employer is barred.” Cappellano v. Massachusetts Bay Transportation Authority, 38 Mass.App.Ct. 231, 235-236 (1995).
Breach of Contract Between the MBTA and Bennett
Bennett claims that the MBTA’s promises in its Affirmative Action Plan (“AAP”) to adhere to fair employment practices and to evaluate the impact of the MBTA’s actions on minorities constitutes an independent contract, apart from the CBA, the breach of which gives rise to a right on behalf of an employee to sue the MBTA for noncompliance with the AAP. However, the grievance procedure is broad enough to encompass Bennett’s claim that the MBTA failed to comply with the AAP. Indeed, in her suit against the Union, Bennett contended that the Union should have acted when the MBTA disciplined Bennett and when it became clear that the MBTA was not adhering to its own AAP. It is undisputed that Bennett never filed any grievance with respect to either issue. Furthermore, in the amended complaint, Bennett alleges that the CBA contained a pledge that the parties would engage in no discrimination on account of race and color in the terms and conditions of employment. Section 104 of the CBA provides that the “Grievance Procedure shall apply to all disputes arising between the Union and the Authority, whether any such dispute occurs as the result of a complaint by an individual member of the Union or a complaint by the Union itself.” (Emphasis added.)
Bennett provides no support for the theory that the AAP is a freestanding contract that supersedes the CBA. Her reliance on O’Brien v. New England Telephone Co., 422 Mass. 686 (1996), and Hobson v. McLean Hospital Corp., 402 Mass. 413 (1988), is misplaced. In O’Brien, the Court found that a personnel manual, which contained no reservation of rights or disclaimer of obligation, granted an employee rights beyond those of an at-will employee. O’Brien, 422 Mass. at 694-95. In Hobson, the Court held that a hospital’s by-laws conferred privileges on certain employees such that termination without cause was sufficient to state a claim against the hospital for breach of an employment contract. Neither case deals with an employee governed by a collective bargaining agreement. Indeed, in O’Brien, the Court analogized the plaintiffs failure to use the grievance procedure in the manual to an employee disregarding the grievance procedure set out in a collective bargaining agreement; just as the union employee is not permitted to go directly to court for remedies against the employer, so too the suit by the plaintiff in O’Brien was barred for failure to comply with the grievance procedures in the manual.
In Azzi v. Western Electric Co., 19 Mass.App.Ct. at 410, the Court held that an employee governed by a collective bargaining agreement may not bring a direct action against his employer based on the implied covenant of good faith and fair dealing contained in eveiy contract. For the same reasons that Bennett cannot sue directly for violation of the CBA, she may not achieve the same result by denominating her action as one for breach of contract between herself and the MBTA arising out of the AAP.
Defamation
The MBTA initially sought dismissal of the plaintiffs defamation clam on the ground that the complaint alleges no statement of fact. In her Certificate Relative to Claims Presented, Bennett clarifies that the defamation claim is based upon the following statements:
The defamatory statement was the charge made by defendant that plaintiff had reported to work in an unfit condition after using narcotics or under the influence of narcotics and that on 4th June, 1992, plaintiff had submitted to a random drug screen and that the results proved positive for cocaine, and that she was unfit to discharge her duties as a result of her condition.
The MBTA concedes that, as clarified, the defamation claim survives its motion to dismiss.
ORDER
For the reasons stated above, the court hereby ORDERS that the MBTA’s Motion in Limine to Dismiss Claims for Relief be ALLOWED in part and DENIED in *159 part; it is further ORDERED that judgment enter DISMISSING the plaintiffs;
1. 42 U.S.C. §1981 claim insofar as it is based upon a theory of disparate impact;
2. claim for breach of contract between the MBTA and UMTA arising out of violation of federal regulations pertaining to drug testing;
3. claim for breach of the Collective Bargaining Agreement between the MBTA and the Union; and
4. claim for breach of contract between Bennett and the MBTA.
It is furthered ORDERED that:
1. The parties are to file an amended joint pretrial memorandum by March 3, 1998 with respect to the claims that remain to be tried, namely:
a. 42 U.S.C. §1981 based upon racially motivated termination and refusal to rehire;
b. 42 U.S.C. §1983 based upon racially motivated termination, termination arising out of the disparate impact of the MBTA’s Policy, racially motivated refusal to rehire, and denial of due process by refusing to grant plaintiff a name-clearing hearing;
c. breach of contract between the MBTA and UMTA arising out of nondiscrimination provisions contained or incorporated in an agreement between UMTA and the MBTA; and
d. defamation; and
2. A hearing will be held on March 3, 1998 on the MBTA’s Motion to Quash Portions of Subpoenas Issued on Behalf of Plaintiff, at which time a trial date for the remaining claims also will be selected.

 In 19 91, Congress renamed UMTA as the Federal Transit Administration. P.L. 102-240, §303.

At the court’s request, Bennett filed a Certificate Relative to Claims Presented clarifying precisely what claims are being asserted in this action.

 After the motion in limine was filed, the court bifurcated plaintiffs claims under 42 U.S.C. §1983 for alleged violation of the right to be free from unreasonable search and seizure guaranteed by the Fourth Amendment to the United States Constitution, G.L.c. 12, §§H and I, and G.L.c. 214, §1B from the remainder of the claims to be tried. Following a jury-waived trial, these claims were ordered to be dismissed.

The MBTA has withdrawn its argument that Bennett’s 42 U.S.C. §1981 claim is barred by the statute of limitations.

The MBTA has withdrawn its argument that Bennett’s 42 U.S.C.§ 1983 claim is barred by the statute of limitations.

Bennett alleges that the MBTA violated 42 U.S.C. §1983 by its racially motivated termination, termination arising out of the disparate impact of the MBTA’s Policy, racially motivated refusal to rehire, violation of her Fourth Amendment right to be free from unreasonable search and seizure, and denial of due process by refusing to grant plaintiff a name-clearing hearing.

In its answer, the MBTA admitted that it is a body politic and political subdivision of the Commonwealth of Massachusetts.

Thus, the fact that the MBTA is not a state agency within the meaning of Mass.RApp.P. 4(a), Okongwu v. Stephens, 396 Mass. 724 (1986), does not resolve whether, as a matter of federal law, it is a state actor for purposes of 42 U.S.C. § 1983.

See also Peters v. Delaware River Port Authority, 16 F.3d 1346, 1350-52 (3d Cir. 1994) (port authority which is financially self-sustaining by means of bonds, tolls, and rent collections, which does not enjoy immunity under the state’s Tort Claims Act, and over which the state exercises a significant measure of control through the appointment of the board, is a “person” amenable to suit under 42 U.S.C. § 1983); Bolden v. Southeastern Pennsylvania Transportation Authority, 953 F.2d 807 (3d Cir. 1991).

Rodriguez-Garcia v. Davila, 904 F.2d 90 (1st Cir. 1990), upon which the MBTA relies, is inapposite. The portion of the decision referenced in the Motion in Limine, 904 F.2d at 98, deals with indirect state action. The entity at issue in Rodriguez-Garcia was a private corporation which provided services to a state entity; although approval from the state had to be secured for the hiring of senior executive officers, the state had no power to appoint members of the Board of Directors and, therefore, lacked the ability to exercise control in the way that the Supreme Court found to be critical. Lebron v. National Railroad Passenger Corp., 513 U.S. at 398.

In 1978/79 Op. Att’y Gen. No. 2 (July 24, 1978), the Attorney General for the Commonwealth construed the phrase “political subdivision” in G.L.c. 161A, §2 as meaning “a governmental entity of the state," as opposed to a true governmental subdivision. He opined that the MBTAfit within the definition of “State” as used in 42 U.S.C. §4201(2); that statute defined the term “State” as “any of the several states of the United States ... or any agency or instrumentality of a State, but does not include the governments of the political subdivisions of the State.”

In addition, the State Auditor biennially audits the MBTA’s accounts and makes a report thereon to the directors, the Governor, and the General Court, G.L.c. 161A, §17; the Commonwealth is obligated annually to fund the amount of any net cost of service, and the state treasurer may borrow on the credit of the Commonwealth to make such required payments. G.L.c. 161A, §§12, 13.

Cf. Brown v. Southeastern Pennsylvania Transportation Authority, 519 F.Supp. 864, 866 (E.D. Pa. 1981) (transportation authority is a state actor).

The MBTA’s argument that the claims brought under G.L.c. 12, §§H and I should be dismissed because of Bennett’s failure to file a discrimination claim with the MCAD or EEOC is also without merit. The state civil rights act claim concerns the constitutionality of the MBTA’s random drug testing policy. The MBTA withdrew its argument that the G.L.c. 214, §1B claim is subject to dismissal for failure to file a claim with the MCAD or EEOC.

The MBTA argues that Bennett withdrew the UMTA claim because she did not include it in the amended complaint. At the hearing on this motion, the court allowed Bennett to deem the claim to have been asserted in the amended complaint.

Assuming that there is a contract, for Bennett to succeed on her third-party beneficiary contract claim, at a minimum, Bennett must have been an intended beneficiary of that contract. Ayala v. Boston Housing Authority, 404 Mass. 689, 699 (1989); Price v. Pierce, 823 F.2d 1114, 1121 (7th Cir. 1987), cert denied, 485 U.S. 960 (1988). An intended beneficiary is a third party whom the contracting parties intended to have the right to sue in the event of breach. Ayala, 404 Mass. at 700-01; Price, 823 F.2d at 1121. To determine if Bennett is an intended beneficiary, the court should first ascertain if employees, as a category, were specifically named in the agreement as beneficiaries. Cf. McBee v. Mack Trucks, Inc., 655 F.Supp. 1459, 1460 (D.Md. 1987) (allowing third-party beneficiary contract claim where plaintiff seeks to enforce conciliation agreement in which he is referred to as a *160 beneficiary). In the absence of any specific reference to either the plaintiff in particular or to employees in general as intended beneficiaries, the court must examine the agreement for evidence of an intent to clothe a third party, such as Bennett, with the power to enforce the contract. D'Amato v. Wisconsin Gas Co., 760 F.2d 1474, 1479 (7th Cir. 1985) (tenor of contracts with the federal government suggests that parties did not intend to make the handicapped direct beneficiaries). If there is no agreement between the MBTA and UMTA, if such an agreement does not incorporate the terms of 49 U.S.C. App. §1615(a)(l), or if Bennett is not an intended beneficiary of such contract, it will be unnecessary to decide whether 49 U.S.C. App. §1615 preempts state-created third-party beneficiary rights or precludes assertion of federal common law third-party beneficiary rights, if any. Cf. Howard v. Uniroyal, Inc., 719 F.2d 1552, 1555 (11th Cir. 1983) (Section 503 of the Rehabilitation Act of 1973, 29 U.S.C. §793, which requires contracts with federal contractors to contain a provision requiring the contracting party to take affirmative action to employ and advance qualified handicapped individuals, and which does not expressly preclude state actions, preempts a state third-party beneficiary claim brought by a qualified handicapped individual alleging breach of the affirmative action clause contained in the contract between his employer and the federal government); D'Amato v. Wisconsin Gas Co., 760 F.2d at 1481 (regulations implementing the affirmative action provisions of the Rehabilitation Act of 1973 indicate that no right to sue as third-party beneficiary exists).

Bennett brings this claim as an intended beneficiary of the CBA.

The facts relating to Bennett, the CBA, and the Union’s decision not to arbitrate her grievance are contained in the memorandum of Decision and Order rendered in this action on the Uniori’s Motion for Summary Judgment.

Section 10 provides that ”[a]ny member . . . shall have the right to appeal from the decision of the Board to the general body, said appeal to be in writing and submitted to the general body at its first meeting.”